FILED
Nov 29 2018, 11:01 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 53S01-1709-PL-612

## Town of Ellettsville, Indiana Plan Commission and Richland Convenience Store Partners, LLC,
*Appellants,*

—v—

## Joseph V. DeSpirito,
*Appellee.*

Argued: November 30, 2017 | Decided: November 29, 2018

Appeal from the Monroe Circuit Court
No. 53C01-1509-PL-1714
The Honorable E. Michael Hoff, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 53A01-1611-PL-2559

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices David, Massa, and Goff concur.

**Slaughter, Justice.**

We adhere to Indiana's longstanding common-law rule that relocating a fixed easement requires the consent of all affected estate-holders. And we reject the minority approach, reflected in the Third Restatement of Property (Servitudes), which permits the unilateral relocation of easements if a court finds the proposed relocation is "reasonable", consistent with the "normal" use and development of the servient estate, and does not adversely affect the dominant estate. Property rights in Indiana are not so flimsy that they may be modified or eliminated if their exercise impedes what is thought to be a more productive or worthwhile use of land. Under Indiana law, such rights may be abridged only with the bargained-for consent of the property owner or through the lawful exercise of eminent domain.

# Factual and Procedural History

## A. History of the Affected Properties

At issue here are two adjoining lots in Ellettsville, Indiana, that were once a single parcel of land owned by Swifty Oil Company. In 1996, Swifty subdivided the parcel and recorded the subdivision by a plat filed with the Monroe County Plan Commission. The plat delineates a utility easement across Lot 1. Swifty conveyed Lot 2 by warranty deed to Martin Hukill, the predecessor in interest to appellee, Joseph V. DeSpirito.

In 2011, DeSpirito obtained Lot 2 by a special limited warranty deed executed and recorded in the Monroe County Recorder's Office. This deed conveyed Lot 2 "as shown on the recorded plat thereof" and "[s]ubject to covenants, easements and restrictions, if any, appearing in the public records." DeSpirito's deed does not explicitly mention a utility easement running through Lot 1. But one of the public records to which it is subject—namely, the subdivision plat—does show the easement.

In 2014, Swifty conveyed the other lot—Lot 1—to appellant Richland Convenience Store Partners, LLC, by a limited warranty deed executed and recorded in April 2014. Richland's title was explicitly subject to "encroachments, easements, rights of way, covenants, reservations, and restrictions in the chain of title to the Real Estate or otherwise existing thereon". Richland's deed made clear Lot 1 was subject to various covenants, conditions, restrictions and, relevant here, "Utility and Drainage easements and setback lines", along with any amendments disclosed on the subdivision's recorded plat.

## B. Town of Ellettsville Plan Commission Proceedings

In 2015, Richland asked the Town of Ellettsville Plan Commission, also an appellant here, for permission to relocate the utility easement on Lot 1. Richland wanted to move the easement, along with the private sewer line running beneath it, fifteen to twenty feet south—all at Richland's own expense. Richland sought to relocate the easement to increase the buildable area of Lot 1. DeSpirito, who owned Lot 2, opposed the relocation and testified against it at the hearing.

Despite DeSpirito's opposition, the Plan Commission approved Richland's request. It found that Richland's "application [met] all of the requirements as set forth by the Town of Ellettsville Zoning Ordinance"; and it granted the proposed amendment to the plat. The Commission specifically found that relocating the sewer line would cause only minimal disruption to DeSpirito, and that Richland had agreed to incur the cost of replacement. It also found that relocation would increase the buildable area on Lot 1 and represented "the best location to allow for future development of the site and maintain the functionality of the sewer line."

## C. Trial Court Proceedings

DeSpirito petitioned for judicial review of the Commission's decision in the Monroe Circuit Court. He also sought a declaration that the Commission's ruling was null and void, along with injunctive relief

preventing construction or other development on Lot 1 inconsistent with the utility easement's existing location as described in the plat. The parties agreed to the preliminary injunction. On summary judgment the trial court found that DeSpirito, as owner of Lot 2, had a fixed utility easement through Lot 1, the location of which was specified in the subdivision plat. Citing Indiana appellate caselaw, the court held that the easement's fixed location meant it "cannot be changed by either party without consent of the other." The court thus granted DeSpirito's motion for summary judgment and remanded to the Commission with instructions to dismiss Richland's petition unless DeSpirito agreed to it. The court also ordered the preliminary injunction to remain in effect.

## D. Court of Appeals Proceedings

Richland and the Commission appealed the trial court's entry of a purported final judgment, though the entry did not resolve all claims as to all parties. *Town of Ellettsville v. DeSpirito*, 78 N.E.3d 666 (Ind. Ct. App. 2017). Ignoring any jurisdictional infirmity, the court of appeals agreed with the trial court that there were no disputed material facts. *Id.* at 668. But the court distinguished the caselaw the trial court had relied upon, finding it involved "an easement by necessity" and thus did not apply. *Id.* at 676-77. The court of appeals concluded that the "more modern" and "more equitable approach to easement relocation" is stated in Section 4.8 of the Third Restatement of Property (Servitudes). *Id.* at 677. This provision entitles the holder of the servient estate—Richland—to "make reasonable changes in the location or dimensions of an easement" at its own expense, but only if they do not "(a) significantly lessen the utility of the easement, (b) increase the burdens on the owner of the easement in its use and enjoyment, or (c) frustrate the purpose for which the easement was created." Restatement (Third) of Property: Servitudes § 4.8(3) (2000).

In adopting the Restatement, the court of appeals cited an opinion from the Supreme Judicial Court of Massachusetts, *M.P.M. Builders, LLC v. Dwyer*, 809 N.E.2d 1053 (Mass. 2004). The Massachusetts court rejected the common-law approach because it "permits an easement holder to prevent

any reasonable changes in the location of an easement" and thus renders "an access easement virtually a possessory interest rather than what it is, merely a right of way." *Id.* at 1058. Our court of appeals found that rationale convincing and predicted we would, too. "We find these observations persuasive and believe that our supreme court would also recognize the utility of adopting the Restatement's approach to easement relocation." 78 N.E.3d at 679.

### E. Supreme Court Proceedings

DeSpirito sought transfer, which we granted, thus vacating the court of appeals' opinion. After oral argument, we found appellate jurisdiction lacking because the trial court never issued a final judgment—one that "disposed of all claims as to all parties". Ind. Appellate Rule 2(H)(1). *Town of Ellettsville v. DeSpirito*, 87 N.E.3d 9, 11 (Ind. 2017). In the interest of judicial economy, we did not dismiss the case outright; rather, we stayed the appeal and remanded to the trial court to determine whether it could enter a final judgment. *Id.* at 11-12. In response to our opinion, the trial court expressly determined that there was no just reason for delay and expressly directed entry of judgment for DeSpirito on his claim for judicial review and against Richland and the Commission. This entry is sufficient to secure appellate jurisdiction.

# Standard of Review

We review the entry of summary judgment de novo, and that is no less true when the trial court sits as a reviewing court on judicial review from an administrative ruling. Under our settled standard, summary judgment is proper if the designated evidence shows there is no genuine issue as to any fact material to a claim or issue, and the movant is entitled to judgment as a matter of law. *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 912-13 (Ind. 2017). Here, the parties agree there are no disputed issues of material fact. The only dispute is one of law, which we also review de novo: Should we adhere to Indiana's longstanding

common-law rule, which requires all affected estate-holders to consent to the relocation of a fixed easement; or adopt the Restatement position, which does not always require such consent? We continue to follow the common-law rule as the law of Indiana and thus affirm the trial court.

# Discussion and Decision

## I.   Lot 2's utility easement through Lot 1 is fixed.

An easement is the right to use another's land for a specified purpose. An easement appurtenant benefits adjoining land; an easement in gross benefits a specific individual. The land benefited by an easement is the dominant estate; the land burdened by an easement is the servient estate.

At issue here is an easement appurtenant because the easement benefits land. The parties agree that Lot 2 has a utility easement running through Lot 1. DeSpirito owns Lot 2, the dominant estate. Richland owns Lot 1, the servient estate. The easement originated in 1996 when the parcel was subdivided, and the easement was delineated in the plat recording the subdivision. The easement runs with the land and thus survived the changed ownership of both lots. DeSpirito obtained Lot 2 "as shown on the recorded plat thereof". Likewise, Richland obtained Lot 1 subject to (among other things) "Utility and Drainage easements and setback lines and any amendments thereto as disclosed on the recorded plat of subdivision."

Richland argues the easement's location is not fixed, which is a mixed question of law and fact. An easement is fixed if the instrument creating it specifies its location or if the law requires it to be maintained in a specific position. In contrast, a "floating easement" is not limited to any specific part of the servient estate. *Easement*, BLACK'S LAW DICTIONARY (10th ed. 2014). Richland argues that the plat describes only the easement's width, not its location in relation to the lot's boundaries. Thus, Richland says, the easement is not fixed.

We disagree. Richland is correct that the plat does not expressly indicate the relative distance of the easement to the boundaries. But the plat is drawn to scale: One inch equals sixty feet. The plat describes the width of the easement and indicates its path through the lot with two dashed lines. With a ruler, one can determine the distance of the easement to the lot boundaries. These distances are determinable, and the easement's width is explicitly indicated. The easement is fixed.

Moreover, even if the plat were not drawn to scale, the disputed easement is fixed by practice. "Where the right to an easement is granted without giving definite location and description to it, the exercise of the easement in a particular course or manner, with the consent of both parties, renders it fixed and certain". *Dudgeon v. Bronson*, 159 Ind. 562, 565, 64 N.E. 910, 910 (1902). (citation omitted)

In sum, Lot 2 has a utility easement through Lot 1, and its location in the subdivision plat is fixed.

## II. Indiana's common law follows a bright-line rule that is easy to apply, in contrast to the Restatement's multifactor test, which leads to uncertain results.

### A. Indiana common-law precedent requires all affected parties to consent to the modification of various servitudes.

We next consider whether, under Indiana law, a servient estate-holder can unilaterally move a fixed utility easement or whether he must obtain the dominant estate-holder's consent.

Our starting point is a well-settled principle concerning easements by necessity and restrictive covenants. An easement by necessity arises when the easement is essential to the reasonable use of nearby property, such as

an easement connecting a landlocked parcel of land to a road. *Easement*, BLACK'S LAW DICTIONARY. Once two landowners agree on an easement by necessity, one cannot alter it without the other's consent. *Ritchey v. Welsh*, 149 Ind. 214, 221, 48 N.E. 1031, 1033 (1898) (finding a way once selected cannot be changed by either party without the consent of the other). The same goes for restrictive covenants, which are private agreements that restrict the use or occupancy of real property. *Covenant*, BLACK'S LAW DICTIONARY. "If any lot, or part of a lot, located in such plat shall have been sold and conveyed, no modification thereof can be made unless the owners of all the lots and parts therein join in the execution of such writing." *Wischmeyer v. Finch*, 231 Ind. 282, 288, 107 N.E.2d 661, 664 (1952) (internal quotation marks omitted).

Here, we deal with a servitude that is similar to both an easement by necessity and a restrictive covenant—specifically, an express fixed easement appurtenant. Such an easement is a permitted use of land granted by the servient estate-holder for the benefit of the dominant estate-holder and runs with the dominant estate. See *Sanxay v. Hunger*, 42 Ind. 44, 48 (1873); accord *William C. Haak Trust v. Wilusz*, 949 N.E.2d 833, 835 (Ind. Ct. App. 2011).

Our court of appeals considered this type of easement in *Shedd v. American Maize Products Company*, 60 Ind. App. 146, 108 N.E. 610 (1915). There, the court found that our default rule for easements by necessity— that, once established, they cannot be changed without the consent of both parties—also applies to fixed easements appurtenant. "When such a way is once selected and located it cannot be changed by either party without the consent of the other." 60 Ind. App. at 155, 108 N.E. at 614 (citing *Thomas v. McCoy*, 30 Ind. App. 555, 66 N.E. 700 (1903); *Ritchey*, 149 Ind. 214, 48 N.E. 1031). Cf. *Daviess-Martin County REMC v. Meadows*, 179 Ind. App. 622, 625, 386 N.E.2d 1000, 1002 (1979) (affirming trial court's determination that government's unilateral relocation of electrical-line easement was taking for public use even when easement was prescriptive).

Although we have never previously adopted this rule expressly, we see no reason to depart from *Shedd*'s holding. The same considerations regarding relocation rights that apply to easements by necessity also apply to easements appurtenant. The *Shedd* court was correct in concluding that once an easement appurtenant's location is fixed, it cannot be relocated unilaterally.

## B. The Restatement approach to relocation agreements is unclear and appears internally inconsistent.

The Restatement advances a different rule—one that only a few state courts have adopted and that our court of appeals describes as "more modern" and "more equitable" than our common-law approach. *DeSpirito*, 78 N.E.3d at 677. The Restatement "rejects the rule espoused by the weight of authority in the United States" in favor of a new rule its drafters believe will

- "permit development of the servient estate to the extent it can be accomplished without unduly interfering with the legitimate interests of the easement holder";

- "increase overall utility"; and

- "encourage the use of easements" by decreasing the cost to the servient landowner to grant them.

Restatement § 4.8 cmt. f.

To date, six state courts of last resort have adopted the Restatement's approach. See *Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229 (Colo. 2001); *Dwyer*, 809 N.E.2d 1053; *St. James Village, Inc. v. Cunningham*, 210 P.3d 190 (Nev. 2009); *Lewis v. Young*, 705 N.E.2d 649 (N.Y. 1998); *Stanga v. Husman*, 694 N.W.2d 716 (S.D. 2005); *Roy v. Woodstock Cmty. Trust, Inc.*, 94 A.3d 530, 539 (Vt. 2014) (adopting § 4.8 for underground easements only). But see *AKG Real Estate, LLC v. Kosterman*, 717 N.W.2d 835 (Wis. 2006); *Herren v. Pettengill*, 538 S.E.2d 735 (Ga. 2000); *Stowell v. Andrews*, 194 A.3d 953 (N.H. 2018). These adopting courts rely primarily on the rationale that

the Restatement "strikes an appropriate balance between the interests of the respective estate owners by permitting the servient owner to develop his land without unreasonably interfering with the easement holder's rights." *Dwyer*, 809 N.E.2d at 1057.

### 1. Under a plain-meaning interpretation of Section 4.8, the Restatement does not apply to fixed easements.

The Restatement's operative provision, Section 4.8, opens with an introductory clause that suggests the rule does not apply to fixed easements:

> **Except where the location and dimensions are determined by the instrument or circumstances surrounding creation of a servitude, they are determined as follows**:
>
> (1) The owner of the servient estate has the right within a reasonable time to specify a location that is reasonably suited to carry out the purpose of the servitude.
>
> (2) The dimensions are those reasonably necessary for enjoyment of the servitude.
>
> (3) Unless expressly denied by the terms of an easement, as defined in § 1.2, the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not
>
>     (a) significantly lessen the utility of the easement,

(b) increase the burdens on the owner of the easement in its use and enjoyment, or

(c) frustrate the purpose for which the easement was created.

Restatement § 4.8 (emphasis added).

In light of Section 4.8's introductory provision—"Except where the location and dimensions are determined by the instrument or circumstances surrounding creation of a servitude, they are determined as follows"—its plain meaning would seem to make the rest of Section 4.8 inapplicable when the "instrument" creating the servitude or the "circumstances surrounding" its creation **"determined"** the location. This provision, in other words, would appear to limit Section 4.8 to servitudes that are not "determined" or fixed.

## 2. The Restatement's drafters believe Section 4.8 applies even to fixed easements.

But a plain-meaning interpretation of Section 4.8 leads to a result at odds with what the Restatement's drafters say they were doing in adopting Section 4.8—namely, rejecting "the rule espoused by the weight of authority in the United States". Restatement § 4.8 cmt. f. Stated differently, the Restatement announced a new rule that would purportedly modernize outdated common-law restraints, like Indiana's, and thereby "increase overall utility" and "encourage the use of easements". *Id*. But if the new rule applies only to the unliteral relocation of **non-fixed** easements, then Section 4.8 amounts to no more than a rephrasing—a restatement, if you will—of the longstanding common-law rule already in place. Read this way, Section 4.8 is not rejecting anything.

The Supreme Court of Nevada faced this very question in *St. James Village*, 210 P.3d 190. There, the court considered whether Section 4.8 applies to an easement recorded by deed with a metes-and-bounds description. The court adopted the Restatement but held "that the plain

meaning of the rule's introductory language prohibits application of the rule when the creating instrument provides for an express location or dimensions of the easement." *Id.* at 193. The court continued: "Thus, when the easement at issue has a location certain, the Restatement rule is not applicable and the easement cannot be unilaterally relocated." *Id*. See also *Offshore Systems-Kenai v. State, Dep't of Transp. & Public Facilities*, 282 P.3d 348, 357 (Alaska 2012) (adding in dicta that Restatement applies only when easement is not fixed); *Lewis*, 705 N.E.2d 649, 653–54 (applying draft version of § 4.8 to non-fixed easement); *Stanga*, 694 N.W.2d 718-19 (applying § 4.8 because right-of-way easement was not described in deed and had changed course and form over time).

The Nevada court's plain-meaning interpretation, however, may not be what the Restatement's drafters had in mind. Their comments state that subsection 4.8(3) applies unless "expressly negated by the easement instrument." Restatement § 4.8 cmt. f. And if the purchasers of an easement wish "to retain control over any change in location, the instrument should be drafted to accomplish that result." *Id*. The drafters also state, under the section "Effects of Specifying Location or Dimensions", that specified locations or dimensions of an easement in the creating instrument "**may** indicate the parties' intent that no deviation be permitted". Restatement § 4.8, Reporter Note p.570 (emphasis added).

These statements cast doubt on a plain-reading construction of Section 4.8. The term "expressly negated" in comment f could mean, as the Nevada court found, that specific locational measurements strictly forbid unilateral relocation. But this reading is at odds with the "may" language following it in the Reporter notes: Specific locations or dimensions in the creating instrument "**may** indicate the parties' intent that no deviation is permitted." Restatement § 4.8, Reporter Note p.570 (emphasis added). Comment f also indicates that when parties wish to contract around the Restatement rule permitting unilateral relocation, the "instrument should be drafted to accomplish that result." In other words, the instrument creating the easement should expressly **prohibit** unilateral relocation of the easement, or else such one-sided action will be deemed permitted.

Further evidence that the Restatement was intended to apply to traditionally fixed easements can be found in Section 4.8's expository examples. In one example, Whiteacre has an easement through Blackacre to use the "existing roadway for a private way". Restatement § 4.8 illus. 4. This easement was granted in 1910. The existing roadway meanders through Blackacre and passes within ten feet of the house located on Blackacre. Blackacre, the servient estate, wants to re-route the road to a better location. The deed describes the easement. The road is located when the easement is created and is determinable. The road has existed for over a century and so is determined by practice. Under the common law, this easement would be fixed, thus requiring all parties to consent to a relocation. Yet the drafters use this as an example of an easement that can be relocated unilaterally. *Id*.

### 3. Some courts conclude that Section 4.8 does not mean what it says.

Unlike Nevada's high court, the Supreme Judicial Court of Massachusetts in *Dwyer*, 809 N.E.2d 1053, declined to adopt the plain-meaning construction and instead read Section 4.8 as being a true new path. Because the "deed describes the location of the easement" and "contains no language concerning its relocation", *id.* at 1055, *Dwyer* held the fixed easement could be unilaterally relocated under Section 4.8. In contrast, and consistent with Section 4.8's plain meaning, the Wisconsin Supreme Court found *Dwyer* to be an outlier in applying Section 4.8 to fixed easements. See *AKG Real Estate*, 717 N.W.2d at 845.

These conflicting state-court opinions persuade us that our court of appeals erred in relying on *Dwyer* for its conclusion that Richland could relocate the disputed easement without DeSpirito's consent. Given the plain meaning of Section 4.8, we reject *Dwyer's* holding that the Restatement applies to fixed easements. Thus, even if we were to adopt the Restatement, we would interpret it based on the section's actual text and not the drafters' apparent intent. But, as discussed next, we decline to adopt Restatement Section 4.8 at all—not as intended or written.

# III. Indiana's common-law approach has long been settled, and we see no reason to modify it.

We decline to adopt the Restatement and opt instead to reaffirm Indiana's common law concerning the relocation of easements: Once an easement's location is fixed, neither the servient nor dominant estate-holder can relocate or modify the easement without the other's consent. This rule applies to easements by necessity, restrictive covenants, and, relevant here, express easements appurtenant.

For four reasons, we continue to embrace the common-law rule. First, the common-law approach settles the expectations of property owners and honors their bargained-for holdings, ensuring stability in land ownership and property valuation. Second, it avoids the likely flood of litigation that would occur were we to abandon the common law's bright-line rule and thus inject uncertainty into whether and when the Restatement applies to various scenarios. Third, it avoids having to address whether modifying the common-law rule would effect a judicial taking of private property, triggering an entitlement to just compensation. And, fourth, it likely leads to more efficient economic outcomes than the Restatement.

## A. Settling expectations

Our first concern with the Restatement's approach is that it may unsettle property values by frustrating the contracting parties' expectations. Parties often bargain over an easement's type and location when first creating an easement. Allowing one party to thwart that bargain may result in a windfall for one party and a corresponding shortfall for the other, thus depriving it of its bargain.

As the Supreme Court of Maine explained in *Davis v. Bruk*, 411 A.2d 660 (Me. 1980), the Restatement approach would "introduce considerable uncertainty into land ownership" by depriving the dominant estate-holder "of his property rights in the servient estate". *Id*. at 665. And, the court continued, following the Restatement could

confer an economic windfall on the servient owner, who presumably purchased the land at a price which reflected the restraints existing on the property. Such a rule would relieve him of such restraints to the detriment of the owner of the dominant estate whose settled expectations would be derailed with impunity.

*Id.* Reaffirming Indiana's common-law approach signals to landowners that we are holding the parties to the agreement they—or their predecessors in interest—made when they negotiated their easement or acquired their property concerning the easement. A key virtue of the common-law rule is that it promotes certainty and encourages investments in dominant estates and the easements serving them by ensuring their property interests and corresponding property values remain stable and predictable.

## B. Minimizing litigation

As Indiana's dearth of caselaw on this topic underscores, our common-law approach has not generated much litigation over the years. The common-law approach is a clear, bright-line rule requiring parties to consent to the modification or relocation of a fixed easement. Were we to adopt the Restatement approach, it would fall to courts to determine, among other things:

- what is a reasonable change to an easement;
- would a reasonable change permit normal use or development of the servient estate;
- would relocation significantly lessen the utility of the easement; and
- would the relocation frustrate the easement's purpose?

Property owners are better suited than courts to answer these questions. We leave the determination of such questions to the parties themselves and the market. Under such circumstances, the governing legal principles should be clear, black-letter rules that leave no room for

judicial discretion. Our longstanding common-law rule fills that bill. See *Herren*, 538 S.E.2d at 736 (allowing unilateral relocation by servient estate-holder would be "opening the door for increased litigation over 'reasonableness' issues based on today's conditions rather than those considered in the original bargain").

## C. Avoiding judicial takings

Another reason for retaining the common-law rule is that the Supreme Court, in a plurality opinion by Justice Scalia, has observed that a judicial taking may arise if a court modifies the common law to eliminate a settled property right.

> In sum, the Takings Clause bars **the State** from taking private property without paying for it, no matter which branch is the instrument of the taking. . . . If a legislature **or a court** declares that what was once an established right of private property no longer exists, it has taken that property, no less than if the State had physically appropriated it or destroyed its value by regulation.

*Stop the Beach Renourishment, Inc. v. Florida Dep't of Envt'l Protection*, 560 U.S. 702, 715 (2010) (emphasis in original). By retaining the common-law rule, we avoid having to consider whether the Restatement so fundamentally alters a property right in the easement that abandoning the rule amounts to a taking of that right requiring the payment of just compensation.

## D. Securing economically efficient outcomes

A final reason for adhering to the common-law rule is the economic reality that property owners with easement disputes often will bargain extralegally—meaning they will contract around existing rules. Both the common-law and Restatement approaches are alternative rules that presumptively govern a legal relationship unless the parties agree to other

terms. But parties are more likely to contract around clear rules that address whether and when the law applies. The Restatement often leaves such questions unanswered. In contrast, the common law provides a straightforward answer and encourages interdependence between parties by requiring them to work cooperatively any time one of them wishes to move an easement.

A potential problem with extralegal bargaining is that if transaction costs are more than *de minimis*, the parties may be deterred from bargaining to the optimal, so-called "Pareto-efficient" outcome—where it is impossible to enhance the welfare of one party without making another worse off. This is the Coase Theorem in its simplest form. As Professor Coase acknowledged, transaction costs often prevent extralegal bargaining and frustrate optimal outcomes. R. H. Coase, *The Problem of Social Cost*, 3 J. Law & Econ. 1 (1960). Because transactions costs are usually more than negligible, we seek the rule that minimizes bargaining costs and encourages parties to attain a more efficient outcome.

The Restatement approach threatens to make bargaining costlier and deter the most efficient use of resources. Under the Restatement, the servient estate-holder may take initial steps to relocate the easement unilaterally because he does not need the dominant estate-holder's prior consent. Especially if those initial steps include investing significant resources, those sunk costs might make the owner of the servient estate "reluctant to accept an offer from the owner of the dominant estate to cease the relocation, even if doing so would be the most efficient outcome." Note, *The Right of Owners of Servient Estates to Relocate Easements Unilaterally*, 109 Harv. L. Rev. 1693, 1701 (1996). The common-law rule, in contrast, forces parties to cooperate from the outset. The servient estate-holder, aware he must obtain the dominant estate-holder's consent before relocating the easement, will likely engage in dialogue before incurring significant costs that would deter a mutually beneficial outcome. Thus, in such instances, the common-law rule encourages bargaining at a lower cost than the Restatement approach.

Richland worries about the bad actor—the dominant estate-holder who uses the common-law rule as a shield and refuses to consent to an easement's relocation despite an economic motive to do so. That is a fair concern, and we acknowledge the prevailing rule may enable dominant estate-holders to use their utility easements to block economically beneficial development of an adjacent plot. But the Restatement presents its own bad-actor problems. As described by the Maine Supreme Court, the dominant estate-holder "could be subjected to harassment by the servient owner's attempts at relocation to serve his own conveniences." *Davis*, 411 A.2d at 665. Adopting the Restatement would not solve the bad-actor problem. It would simply empower a different party—the servient estate-holder—to act badly. There is no reason to believe servient estate-holders will pursue their own self-interest with any less gusto under the Restatement than dominant estate-holders under the common law. Thus, adopting the Restatement to thwart the dominant estate-holder that uses the easement as a shield would merely reassign property values to the servient estate-holder, and we see no point in that.

## Conclusion

For these reasons, we retain Indiana's common-law rule prohibiting the unilateral relocation of fixed easements and thus affirm the trial court's entry of judgment for DeSpirito on his petition for judicial review and against Richland and the Commission.

Rush, C.J., and David, Massa, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANTS

TOWN OF ELLETTSVILLE PLAN COMMISSION
Darla S. Brown
Sturgeon & Brown, P.C.
Bloomington, Indiana

RICHLAND CONVENIENCE STORE PARTNERS, LLC
Andrew P. Sheff
Sheff Law Office
Indianapolis, Indiana

Carina M. de la Torre
The de la Torre Law Office LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Michael Rabinowitch
Maureen E. Ward
Wooden McLaughlin LLP
Indianapolis, Indiana