## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 03 2019, 7:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEES

Jason A. Lopp
Whitney E. Wood
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bart M. Betteau, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Robert Headrick and Karen Headrick, <br> *Appellees-Defendants* | October 3, 2019 <br><br> Court of Appeals Case No. 18A-MI-2610 <br><br> Appeal from the Floyd Superior Court <br><br> The Honorable Joseph P. Weber, Special Judge <br><br> Trial Court Cause No. 22D02-1710-MI-1403 |

**May, Judge.**

[1]     Bart M. Betteau appeals the trial court's ruling that Robert and Karen Headrick are owners of an easement allowing use of a gravel driveway that runs across Betteau's property. Betteau raises three issues on appeal, which we consolidate and restate as one: whether the trial court committed clear error when it found

the Headricks were owners of the easement and ordered Betteau to move the driveway back to the path it traveled before he relocated it. We affirm.

# Facts and Procedural History

[2] In 2013, Brian and Velinda Heasley conveyed to the Headricks, via separate deeds, real property located at 3416 Paoli Pike and 3420 Paoli Pike, Floyd Knobs, Indiana ("Headrick Properties"). There were two homes on the Headrick Properties, and the Headricks operated them as rental properties. They also stored personal property, including a camper and a suburban, on the Headrick Properties.

[3] After selling the Headrick Properties to the Headricks, the Heasleys retained ownership of two tracts of real property located immediately south and downhill from the Headrick Properties. In 2017, the Heasleys sold these two tracts of land to Betteau ("Betteau Properties").[1] For convenience and clarity,

---

[1] The street address for the Betteau Properties is 3422 Paoli Pike, Floyd Knobs, Indiana.

we reproduce the diagram included in Betteau's brief below.



(Plaintiff's Br. at 13.)

[4]     The deeds to the Betteau Properties provided he took the properties subject to the rights of others to use certain roadways and easements "both of record and as traveled and used[.]" (Plaintiff's Ex. 11.)  The deeds also indicated there were "certain easements and roadways both of record and as travelled and used at the present time, and subject to the legal right of others to use the same." (Plaintiff's Ex. 12.)

[5]     The deeds to the Headrick Properties included "the right to use a 10 foot strip of land for roadway purposes[,]" (Plaintiff's Ex. 3), and "the right of ingress and

egress over certain roads leading from said property to [Paoli Pike[2]]. . . and subject to the liability of the owner of the above described real estate to pay the pro rata share of the upkeep and maintenance of said roadways." (Plaintiff's Ex. 4) (footnote added). The ten-foot strip of land referenced in these deeds runs partially along the eastern boundary of the Betteau Properties ("eastern easement") and partially along the property to the east of the Betteau Properties.

[6] Since at least 1980, a gravel drive ran through the Betteau Properties and connected the Headrick Properties to Paoli Pike, which is a public roadway. The gravel drive was never fully contained within the eastern easement. Around 2000, the path of the driveway was partially modified westward to accommodate a restaurant parking lot. When the Headricks bought the Headrick Properties, the driveway went along the eastern easement and then cut away from the eastern easement in a southwesterly direction towards Paoli Pike. This driveway served as the sole access road for anyone living on the Headrick Properties or the Betteau Properties. Prior to Betteau acquiring the Betteau Properties, the Headricks and the Heasleys jointly maintained the driveway up to the point where the driveway split towards the Headricks' Properties. This maintenance included adding gravel and inserting water

---

[2] The deed itself identifies the road as "State Road #150." (Plaintiff's Ex. 4.) However, the Headricks identify the road as "Paoli Pike" in their brief. (Appellee's Br. at 9.)

breaks to prevent erosion. The Headricks maintained the portion of the driveway located solely on their property.

[7] When he bought the Betteau Properties, Betteau intended to tear down the existing house and build a new one. Thus, he sought a Special Exception from the Floyd County Board of Zoning Appeals to construct the new home. The Board granted Betteau's request to build a new home, but the Board said that a Road Maintenance Agreement had to be executed between Betteau and the Headricks prior to the Board issuing a certificate of occupancy to Betteau.

[8] Once Betteau finished construction of his house and prior to signing a Road Maintenance Agreement, he unilaterally relocated the driveway eastward. He parked a truck blocking the previously used driveway and erected a sign saying the road was closed. The relocated driveway required drivers to make a sharper turn to go up to the Headrick Properties and made the path up to the Headrick Properties steeper. This made it harder for the Headricks and their tenants to navigate the driveway. The local Chinese restaurant refused to deliver takeout up the relocated driveway, and Robert Headrick lost potential tenants because they did not want to have to traverse the driveway. Also, the relocated driveway did not include water breaks, which led to erosion of the driveway.

[9] On October 6, 2017, Betteau filed a complaint for declaratory judgment asserting the gravel drive impaired his enjoyment of his property and was outside the deeded easement. Betteau sought an order declaring the existing driveway to be solely his private driveway, directing the Headricks to establish

their own roadway inside of the deeded easement, and declaring the Headricks solely responsible for the cost of maintaining the easement roadway.

[10] On November 7, 2017, the parties entered into a Road Maintenance Agreement. The Road Maintenance Agreement provided Betteau was to maintain, at his expense, the portion of the driveway that serviced the Betteau Properties, and Robert Headrick was to maintain, at his expense, the portion of the driveway that serviced the Headrick Properties. Karen Headrick did not sign the Road Maintenance Agreement.

[11] On December 5, 2017, the Headricks filed an answer to Betteau's complaint and asserted a counterclaim. The Headricks claimed they and their predecessors used the driveway continually and uninterruptedly for ingress and egress over the land for a period of at least twenty years, which established a prescriptive easement over Betteau's land. Further, the Headricks asserted Betteau blocked the gravel driveway serving the Headrick Properties and unilaterally moved the driveway. The Headricks sought an order directing Betteau to return the path of the driveway to the way it was when Betteau took title.

[12] The court held a bench trial on June 15, 2018, and issued findings of fact and conclusions of law on September 25, 2018. The court ordered, adjudged, and decreed: (1) the Headricks were owners of an easement for use of the roadway along its "original path" before being moved by Betteau; (2) Betteau was to arrange for the roadway to be returned to its "original path" at his sole expense; and (3) the Headricks were responsible for one-half of the cost of upkeep of the

portion of the roadway that is used by both the Headricks and Betteau and the full cost of upkeep for the portion of the roadway that is used only by the Headricks. (App. Vol. II at 86.) The court did not reach the question of whether the Headricks established a prescriptive easement because it found the deeds granted the Headricks an easement. The court also denied the Headricks' request for damages and attorney fees.

# Discussion and Decision

[13] When a trial court has issued findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), "[t]he findings or judgment are not to be set aside unless clearly erroneous, and we give due regard to the trial court's ability to assess the credibility of witnesses." *WindGate Props., LLC v. Sanders*, 93 N.E.3d 809, 813 (Ind. Ct. App. 2018). Consequently, "we first consider whether the evidence supports the factual findings and then consider whether the findings support the judgment." *Id*. "Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences from the evidence to support them. The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings." *Mueller v. Karns*, 873 N.E.2d 652, 657 (Ind. Ct. App. 2007), *reh'g denied*. We defer substantially to the trial court's factual determinations, and we will not reweigh the evidence or judge the credibility of the witnesses. *Id*. Nevertheless, we review the trial court's conclusions of law *de novo*. *Id*.

[14] Betteau argues the Headricks and their tenants legally may access the Headrick Properties only by using the eastern easement over Betteau's land.[3] He argues the Headricks may only use the gravel driveway to the extent the path of the gravel driveway is contained within the eastern easement and may not use it to the extent it veers from the eastern easement. Betteau cites *Oakes v. Hattabaugh*, 631 N.E.2d 949 (Ind. Ct. App. 1994), *reh'g denied*, *trans. denied*, and argues the "as traveled and used" language in his deeds is vague and insufficient to create an easement because the deeds do not identify a dominant or a servient estate.

[15] Black's Law Dictionary defines "easement" as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)." EASEMENT, Black's Law Dictionary (11th ed. 2019). An easement consists of a dominant estate and a servient estate. *McCauley v. Harris*, 928 N.E.2d 309, 314 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. The owner of the easement is known as the dominant estate and "possesses all rights necessarily incident to the enjoyment of the easement." *Id*. "The owner of the

---

[3] Betteau argues the trial court erred in conclusion of law 32, which states: "The ten-foot easements described in multiple deeds discussed herein, which are parallel with and overlap the eastern and western boundaries of the Betteau property, having never been utilized or developed, have been abandoned and are hereby deemed vacated." (App. Vol. II at 86.) The Headricks do not challenge Betteau's argument to the extent it does not implicate the existence of the driveway easement. (Appellee Br. at 5 n.1.) We do not find it necessary to address Betteau's argument because it is ancillary to resolution of the existence and location of the driveway easement. *See Borth v. Borth*, 806 N.E.2d 866, 870 (Ind. Ct. App. 2004) ("Where trial court findings on one legal theory are adequate, findings on another legal theory amount to mere surplusage and cannot constitute a basis for reversal even if erroneous.").

property over which the easement passes, known as the servient estate, may use his property in any manner and for any purpose consistent with the enjoyment of the easement, and the dominant estate cannot interfere with the use." *Id.*

[16] Based on those legal standards, Betteau challenges conclusions of law 27, 28, and 30, which state:

> 27. The Defendants have an easement, granted to them by deed, to use the roadway, as traveled and used for the purpose of ingress and egress at the time that the property was transferred by the Headrick [D]eeds.

> 28. The uncontroverted evidence is that the roadway traveled and used for ingress and egress, at the time of both the Headrick Deeds' execution and the Betteau Deeds' execution, is best described and indicated by the annotation of a pathway labeled number 4 depicted on Plaintiff's Exhibit 13 [a marking on a photograph identified by Robert Headrick as the location of the driveway when he purchased the property (Tr. Vol. II at 66.)], which agrees with and corresponds to the path identified as "original path" in the annotation to Defendant's Exhibit C-4.

> \* \* \* \* \*

> 30. The Plaintiff's reliance on [*Oakes*] is misplaced. *Oakes* makes clear that the dominant and servient tenements are adequately identified, so long as it is clear upon whose property the easement is placed (the servient tenement) and to whose property the benefit of the easement is conferred (the dominant tenement). *See Oakes* at 952. Here there is no question that the easement is placed upon the Plaintiff's land (the servient tenement) and is conveyed to the benefit of the Defendants' land (the dominant tenement).

(App. Vol. II at 85.)

[17] The interpretation of a deed containing an easement provision is a pure question of law. *Rennaker v. Gleason*, 913 N.E.2d 723, 729 (Ind. Ct. App. 2009). "The object of deed interpretation is to identify and implement the intent of the parties to the transaction as expressed in the plain language of the deed. We read the language of real covenants in the ordinary and popular sense, and not in a technical or legal sense." *Id*. We assume the parties intended every part of the deed to be meaningful, and we favor a construction that reconciles or harmonizes the entire deed. *Kopetsky v. Crews*, 838 N.E.2d 1118, 1124 (Ind. Ct. App. 2005). We will look to extrinsic evidence if the language of a deed is ambiguous, and we will consider the language of a deed ambiguous if it is capable of two or more reasonable interpretations. *Id*.

[18] Betteau contends we cannot conclude that the "as traveled and used" language in Betteau's deeds was inserted for the benefit of the Headricks. In contrast, the Headricks argue that it is clear from the language of the Headrick deeds and the Betteau deeds that an easement exists for use of the driveway by the Headricks over Betteau's land along the path the driveway traveled when both the Headricks and Betteau took title to their respective properties. The Headricks argue that while the deeds do not use the terms "dominant" tenement and "servient" tenement, the ordinary language contained within the deeds is enough to identify the dominant and servient estates. Further, the Headricks argue extrinsic evidence indicates the Headrick Properties were meant to be the dominant tenement. The Headrick Properties' sole means of access to Paoli

Pike was by use of the driveway. Also, the Headricks presented evidence that Heasley walked along the driveway with the Headricks when he conveyed the Headrick Properties to the Headricks and discussed their use of the driveway.

[19] In *Town of Ellettsville v. Despirito*, a utility easement ran across Lot 1 for the benefit of Lot 2. 111 N.E.3d 987, 988 (Ind. 2018). Richland became the owner of Lot 1 and petitioned the Town of Ellettsville Plan Commission to relocate the utility easement. *Id.* The owner of Lot 2 opposed the relocation. *Id.* at 989. The Plan Commission granted the owner of Lot 1's petition, and the owner of Lot 2 appealed the decision to our Indiana Supreme Court. *Id.* at 989-90. Our Indiana Supreme Court held the utility easement was fixed. *Id.* The Court went on to hold that Indiana adheres to the common law rule prohibiting the unilateral relocation of a fixed easement and ruled in favor of the owner of Lot 2. *Id.* at 997. One of the reasons the Court cited for retaining the common law rule was that it honored the bargained-for holdings of the property owners and ensured stability in land ownership and property value. *Id.* at 994.

[20] While the Betteau deeds recite the phrase "as travelled and used" rather than laying out the metes and bounds location of the easement, we hold that the language in the deeds created an easement along the driveway as it was travelled when Betteau and the Headricks took ownership of the property. *See Kopetsky*, 838 N.E.2d at 1127 (holding language in conveyance sufficient to identify the dominant estate even though the deed did not use the particular terms "dominant" and "servient"). To the extent Betteau believes the "as travelled and used" language in the deed is ambiguous, extrinsic evidence

indicates the language is referring to the gravel driveway that existed when the Heasleys owned the Betteau Properties. The Headricks used the gravel driveway. The gravel driveway ran through Betteau's land and therefore the Betteau Properties were the servient estate. The Headricks' sole means of accessing Paoli Pike was via the driveway. Therefore, while the term "dominant" is not used in the Deeds, the Headricks' possessed the dominant estate because the easement was intended for their benefit. The location of the easement is the path the gravel driveway travelled as identified in the trial court's order because that is the path commonly used and travelled from the Headrick Properties to Paoli Pike when the parties to this case took title to their respective properties. And, subject to a slight modification around the year 2000, that is the path that has been used since at least 1980. Also, the presence of a utility pole and other obstructions make construction of a driveway that runs solely down the eastern easement impractical. Therefore, Betteau acted beyond his rights in relocating the driveway without the Headricks' consent. *See Town of Ellettsville*, 111 N.E.3d at 988 ("We adhere to Indiana's longstanding common-law rule that relocating a fixed easement requires the consent of all affected estate-holders.").

### *Driveway Maintenance*

With regards to responsibility for maintenance of the driveway, the trial court made the following conclusion of law:

> 33. The assignment of liabilities for repair and upkeep of the easement in question identified in the Headrick Deeds predates

and supersedes the "Private Road Maintenance Agreement" made by the Parties on or about November 7, 2017. In any event, that agreement did not include the Defendant, Karen Headrick, as a party, and it is unclear that such agreement was supported by any valuable consideration. Therefore, the following language in the Headrick Deed shall control the allocation of expenses for maintenance and upkeep of the easement: **"subject to the liability of the owner of the above described real estate to pay the pro rata share of the upkeep and maintenance of said roadways."**

(App. Vol. II at 86) (emphasis in original). Based thereon, the trial court ordered the Headricks were responsible for half the maintenance cost of the portion of the driveway that services both the Betteau Properties and the Headrick Properties.

[22] Betteau argues the Headricks only access through the Betteau Properties should be via the "eastern easement" and the Headricks should be solely responsible for the cost of maintaining the easement. As explained *supra*, the Headricks have a right to use the driveway at the location where it was "travelled and used" until moved by Betteau. Betteau argues that the dominant tenement is responsible for any repairs or maintenance of an easement enjoyed by the dominant estate alone. However, both Betteau and the Headricks enjoy use of the driveway. Thus, it logically follows both should share the cost of maintenance of the driveway because that is what the Headrick deed expressly provides.

# Conclusion

[23] The deeds to the Betteau Properties indicate Betteau took the properties subject to an easement allowing the Headricks a path for ingress and egress across his property to Paoli Pike. That path was marked by a gravel driveway. Therefore, the Headricks have a right to use the gravel driveway along the path it followed at the time the Headricks and Betteau took title to their respective properties. Further, per the language in the Headricks' deeds, the trial court did not err in assessing the Headricks and Betteau each half the maintenance cost for the portion of the gravel driveway that is utilized by both parties. Therefore, we affirm the trial court.

[24] Affirmed.

Mathias, J., and Brown, J., concur.