

FILED

Jul 31 2023, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS
MICHAEL O. CAIN AND LINDA A.
RAYMOND

Todd G. Relue
Ryan T. Leagre
Plews Shadley Racher & Braun LLP
Indianapolis, IN

ATTORNEY FOR APPELLANT TAMMY
JO SEXTON-TROY

Darla S. Brown
Sturgeon & Brown, PC
Bloomington, Indiana

ATTORNEYS FOR APPELLEES
WILLIAM J. HUFF II
REVOCABLE TRUST
DECLARATION DATED
JUNE 28, 2011, AND
NICOLE E. HUFF
REVOCABLE TRUST
DECLARATION, DATED
JUNE 28, 2011

Tammy L. Ortman
Lewis & Kappes, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael O. Cain and Linda A. Raymond et al., | July 31, 2023 |
| *Appellants-Plaintiffs and Counterclaim Defendants,* | Court of Appeals Case No. 22A-PL-1258 |
| v. | Appeal from the Monroe Circuit Court |
| William J. Huff II Revocable Trust Declaration Dated June 28, 2011, and Nicole E. Huff Revocable Trust Declaration, Dated June 28, 2011, | The Honorable Holly M. Harvey, Judge |
| *Appellees-Defendants and Third-party Plaintiffs* | Trial Court Cause No. 53C06-1804-PL-755 |

**Opinion by Judge Kenworthy**
Judge Crone and Senior Judge Robb concur.

**Kenworthy, Judge.**

## Case Summary

[1] Trusts for William and Nicole Huff (collectively, "Huffs") own a parcel of land abutting a neighborhood called The Shores. This parcel—which we call the THR Parcel—comes with certain appurtenant easement rights to cross The Shores. After the Huffs obtained the THR Parcel, they obtained an adjacent tract, which we call the Chumley Parcel. Eventually, litigation arose concerning the scope of the Huffs' easement rights with respect to both parcels.

[2] Below, the Huffs sought partial summary judgment, requesting a declaration "the Huffs are entitled to use the [e]asement[s] to access the Huffs' [p]roperty, including both the THR Property and the Chumley Parcel, as long as [the] Huffs do not intensify the [e]asement[s]." *Cain App. Vol. 2* at 154. The trial court granted the Huffs' motion. In doing so, the court included language suggesting there is no longer delineation between the THR Parcel and the Chumley Parcel, which renders the declaratory judgment broader than requested. Determining the Huffs are entitled only to the declaratory judgment they sought, we affirm partial summary judgment for the Huffs while clarifying the scope of the judgment. We remand the case for further proceedings.

## Facts and Procedural History[1]

Kenton L. Robinson owned a tract of land near Lake Monroe, which he planned to develop into a subdivision called The Shores. Adjacent to the tract was the THR Property, at that point owned by Terre Haute Realty Corporation ("THR"). In 1990, Robinson executed a Grant of Easement ("Grant"), which specifically describes the THR Property as the dominant estate. *See Cain App. Vol. 3* at 41–48 & 217. In the Grant, Robinson established three easements across common areas in The Shores. *Id.* at 41–48. A representative from THR signed the Grant, assenting to the "terms, conditions[,] and covenants" of the Grant. *Id.* at 44. One provision states:

> Grantee covenants to limit use of the easements . . . for the construction, development[,] and use by Grantee and its . . . assigns of six (6) single[-]family residential structures, each of which may include guest and caretaker quarters and other buildings attendant thereto, *to be located on Grantee's real estate described in Exhibit A and as more particularly described above.*

*Id.* at 43 (emphasis added). Exhibit A describes only the THR Property. *See id.* at 41–48 & 217. No portion of the Grant describes other property as part of the dominant estate. *See id.* at 41–48. And there is no language allowing THR or its successor in interest to unilaterally add land to the dominant estate. *See id.*

---

[1] We held oral argument in this case at the Indiana Court of Appeals Courtroom on May 4, 2023. We thank the advocates for their skilled presentations.

[4]     In 2017, the Huffs obtained the THR Property. *See id.* at 19–40. They later acquired the Chumley Parcel from Chumley, LLC. *See id.* at 13–18. The Chumley Parcel forms a peninsula on Lake Monroe. *See id.* at 78–79.

[5]     In 2018, Michael O. Cain and Linda A. Raymond—owners of one of the affected lots in The Shores (collectively, "Cain")—sued the Huffs, alleging the Huffs were exceeding their easement rights. *Cain App. Vol. 2* at 58. At first, the lawsuit concerned only the THR Property, focusing on whether the Huffs could truck logs from the THR Property across The Shores. *See id.* at 58–63. The litigation led to two appeals involving the propriety of injunctive relief. *See Cain v. William J. Huff, II Revocable Trust Declaration, Dated June 28, 2011*, 149 N.E.3d 645 (Ind. Ct. App. 2020), *trans. denied*; *William J. Huff, II Revocable Trust Declaration, Dated June 28, 2011 v. Cain*, 120 N.E.3d 1029 (Ind. Ct. App. 2019), *trans. denied*. Eventually, the litigation involved the Chumley Parcel. *See Cain App. Vol. 2* at 126–28, 140.

[6]     The Huffs filed a counterclaim against Cain and a third-party complaint against Tammy Jo Sexton-Troy and eleven other affected estate-holders in The Shores[2] (collectively at times, "Sexton-Troy"). *See id.* at 141–64. The Huffs later moved for summary judgment on Count 3 of the counterclaim/third-party complaint. *Cain App. Vol. 2* at 164–65. In doing so, the Huffs sought a specific declaratory judgment "the Huffs are entitled to use the [e]asement[s] to access the Huffs'

---

[2] Apart from Cain and Sexton-Troy, no other affected estate-holder participates in this appeal.

[p]roperty, including both the THR Property and the Chumley Parcel, as long as [the] Huffs do not intensify the [e]asement[s]." *Id.* at 154. In seeking this declaration, the Huffs asked the trial court to "apply the law of the case" and rely on language in portions of the prior appellate opinions. *Id.* at 165.[3]

[7] The trial court granted partial summary judgment to the Huffs. In doing so, the court determined it was bound by the law-of-the-case doctrine. *Id.* at 54–55. The written order contains the following statement: "[T]he Huffs may use the Grant . . . to access the entirety of their real estate, *without regard for the delineation* between the THR [Property] and [the] Chumley Parcel[.]" *Id.* at 55 (emphasis added). The order also contains language rendering the order final and appealable. *See id.* at 57. Several non-prevailing parties moved to correct error, *see Sexton-Troy App. Vol. 2* at 203–15, and the court denied those motions.

[8] Cain and Sexton-Troy[4] now appeal.

## Discussion and Decision

[9] At the outset, we note the parties at times focus on the law-of-the-case doctrine. But we need not address this doctrine in depth. As our Supreme Court has explained, this doctrine "is not a uniform rule of law, but rather 'only a

---

[3] Cain unsuccessfully cross-moved for summary judgment; Cain does not appeal the denial of this motion.

[4] Contrary to the Indiana Rules of Appellate Procedure, Sexton-Troy did not acknowledge our order setting oral argument. *See* Ind. Appellate Rule 52(C) ("Counsel of record and unrepresented parties shall file with the Clerk an acknowledgment of the order setting oral argument no later than fifteen (15) days after service of the order."). Further, without explanation, Sexton-Troy did not appear at the oral argument.

discretionary rule of practice.'" *State v. Lewis*, 543 N.E.2d 1116, 1118 (Ind. 1989) (quoting *United States v. U.S. Smelting Refin. & Mining Co.*, 339 U.S. 186, 199 (1950)). As such, the doctrine does not limit the power of an appellate court.[5] *See id.*; *accord* 18B Edward H. Cooper, Federal Practice and Procedure § 4478 (3d. ed. 2023) (noting any perceived constraint "is a matter of discretion" and, "[s]o long as the case remains alive, there is power to alter or revoke earlier rulings"). And to the extent either prior appeal in this case (involving mere injunctive relief) implicated the law-of-the-case doctrine, we decline to apply the doctrine. *Cf. State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994) (electing to address the merits out of fairness); *Wedel v. American Elec. Power Serv. Corp.*, 839 N.E.2d 1236, 1247 (Ind. Ct. App. 2005) (citing *Huffman* and declining to apply the discretionary doctrine where the prior appeal involved property rights).

### Standard of Review

[10] Cain and Sexton-Troy ("Neighbors") appeal from the denial of their motions to correct error, which challenged the order granting summary judgment to the Huffs. In general, we review a trial court's ruling on a motion to correct error for an abuse of discretion, which occurs when the ruling is "clearly against the logic and effect of the facts and circumstances before the court or if the court

---

[5] "Principles of authority, however, do inhere in the 'mandate rule' that binds a lower court on remand to the law of the case established on appeal. The very structure of a hierarchical court system demands as much." 18B Edward H. Cooper, Federal Practice and Procedure § 4478 (3d. ed. 2023); *see, e.g.*, *In re C.F.*, 911 N.E.2d 657, 658 (Ind. Ct. App. 2009) (differentiating horizontal *stare decisis* (which Indiana does not recognize) from vertical *stare decisis*, which is "an obligation to follow the decisions of superior tribunals"—an obligation Indiana does recognize).

has misinterpreted the law." *Bruder v. Seneca Mortg. Servs., LLC*, 188 N.E.3d 469, 471 (Ind. 2022). Moreover, "[w]e review summary judgment decisions de novo, applying the same standard as the trial court." *U.S. Automatic Sprinkler Corp. v. Erie Ins. Exch.*, 204 N.E.3d 215, 220 (Ind. 2023). As to summary judgment, the party seeking summary judgment must designate the evidence "on which it relies for purposes of the motion." Ind. Trial Rule 56(C). At that point, any opposing party shall designate evidence in opposition. *Id.* In the end, the moving party is entitled to summary judgment if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to . . . judgment as a matter of law." *Id.*

### Indiana Easement Law

[11] As our Supreme Court recently stated: "An easement is the right to use another's land for a specified purpose. An easement appurtenant benefits adjoining land; an easement in gross benefits a specific individual. The land benefited by an easement is the dominant estate; the land burdened by an easement is the servient estate." *Town of Ellettsville v. DeSpirito*, 111 N.E.3d 987, 990 (Ind. 2018). And where—as here—an easement was "voluntarily created by a written instrument to serve a specified purpose," the easement is known as an express easement. *Easement*, Black's Law Dictionary (11th ed. 2019). Furthermore, in seeking summary judgment, the Huffs do not claim any *implied*

easement rights.[6]  Rather, this case involves only express easements appurtenant, *i.e.*, "a permitted use of land granted by the servient estate-holder for the benefit of the dominant estate-holder [that] runs with the dominant estate."  *DeSpirito*, 111 N.E.3d at 991.

[12]  When examining the scope of easement rights in Indiana, we "hold[] the parties to the agreement they—or their predecessors in interest—made when they negotiated their easement or acquired their property concerning the easement." *Id.* at 995; *cf. Successor in Interest*, Black's Law Dictionary (11th ed. 2019) (noting a successor in interest "retains the same rights as the original owner, with no change in substance").  In this way, Indiana common law "promotes certainty," ensuring "property interests and corresponding property values remain stable and predictable."  *DeSpirito*, 111 N.E.3d at 995.

[13]  As to our common law, appurtenant easement rights benefit only the dominant estate; those rights do not automatically benefit all estates held by the dominant estate-holder—else, an easement appurtenant would essentially convert to an easement in gross, contrary to the original agreement.  *See, e.g.*, *id.* at 990 ("An easement appurtenant benefits adjoining land; an easement in gross benefits a specific individual.").  In sum, when rights stem from the land, they run with the land.  *See, e.g.*, *id.*  And unless (1) the instrument establishing the easement

---

[6] *See, e.g.*, *Appellee's Br. (Responding to Cain)* at 13 ("The Grant . . . creates express, appurtenant easements.") & 21 ("Huff[] [is] the titleholder[] of the dominant estate benefitted by the [e]asements appurtenant created in 1990[.]").

provides otherwise or (2) the affected estate-holders modify their agreement concerning the easement, appurtenant easement rights do not grow or shrink based on the property holdings of the current landowner. *See, e.g.*, *id.* at 995.

[14] As to the scope of easement rights, "[t]he nature, extent[,] and duration of an easement created by an express agreement or grant must be determined by the provisions of the instrument creating the easement." *Erie-Haven, Inc. v. First Church of Christ*, 292 N.E.2d 837, 841 (Ind. Ct. App. 1973). That is, a court "must ascertain and give effect to the intention of the parties[.]" *Blind Hunting Club, LLC v. Martini*, 169 N.E.3d 1121, 1125 (Ind. Ct. App. 2021). Ascertaining the parties' intent requires "proper construction of the instrument," *id.*, and "general rules of construction apply," *Brown v. Heidersbach*, 360 N.E.2d 614, 618 (Ind. Ct. App. 1977). As for those rules of construction, to the extent an agreement is unambiguous, we give words their "plain and ordinary meaning in light of the whole agreement, 'without substitution or addition.'" *Hartman v. BigInch Fabricators & Constr. Holding Co., Inc.*, 161 N.E.3d 1218, 1223 (Ind. 2021) (quoting *Care Group Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 752 (Ind. 2018)). And the construction of an agreement is generally appropriate for summary judgment, presenting a pure question of law subject to *de novo* review. *See, e.g.*, *Sawyer*, 93 N.E.3d at 753 (involving construction of a contract); *Martini*, 169 N.E.3d at 1125 (involving construction of an instrument granting an easement).

### Interpreting the Grant

[15] Here, the designated evidence indicates the Grant was a private agreement between Robinson and THR, recorded in Monroe County in early 1990—long

before Huff acquired the THR Property in 2017. *See Cain App. Vol.* 3 at 41–50. As to the Grant, the preamble is directed toward THR and "its members, successors, assigns, invitees[,] and licensees," *id.* at 41, and the designated evidence indicates Huff is THR's successor in interest, *see id.* at 19–40. The Grant identifies only the THR Property as the dominant estate. *See Cain App. Vol. 3* at 41–48 & 217. And the Grant does not provide for unilateral expansion of the dominant estate. *See id*. at 41–48.

[16] Applying the unambiguous language of the Grant within the broader context of Indiana common law, we conclude there is a legal distinction between rights associated with the THR Property and rights associated with the Chumley Parcel. Put differently, neither the Grant nor our common law extinguishes delineation between the THR Property, which is identified as the dominant estate, and the Chumley Parcel, which is not identified in the Grant. For example, under the Grant, the Huffs may use the easements to facilitate development of the *THR Property*. That is because the Grant states as much:

> Grantee covenants to limit use of the easements . . . for the construction, development[,] and use by Grantee and its . . . assigns of six (6) single[-]family residential structures, each of which may include guest and caretaker quarters and other buildings attendant thereto, *to be located on Grantee's real estate described in Exhibit A and as more particularly described above*.

*Cain App. Vol. 3* at 43 (emphasis added). But because the Grant does not refer to the Chumley Parcel or otherwise permit unilaterally adding land to the dominant estate—and because the affected estate-holders have not modified

their agreement concerning the easements—Indiana law does not allow Huff to use the easements to facilitate logging or other development of the *Chumley Parcel*.[7]  *See DeSpirito*, 111 N.E.3d at 995 (directing courts to apply the terms of the easement instrument unless subsequently modified by the parties); *accord Restatement (Third) of Property (Servitudes)* § 4.11 cmt. b (Am. L. Inst. 2023) (discussing the presumption that, when the agreement does not specifically state otherwise, an appurtenant easement does not benefit a later-acquired tract).

### Scope of Declaratory Judgment

[17]    In the count at issue, the Huffs sought a specific declaration concerning the scope of their easement rights.  That is, the Huffs sought a declaration "the Huffs are entitled to use the [e]asement[s] to access the Huffs' [p]roperty, including both the THR Property and the Chumley Parcel, as long as [the] Huffs do not intensify the [e]asement[s]."  *Id.* at 154.  As to the requested declaration, we discern no restraint (contractual or otherwise) prohibiting the THR Homeowners from, at the very least, moving between the THR Property and the Chumley Parcel as an independent means of ingress or egress via Lake Monroe.[8]  Thus, in this way, the Huffs are entitled to the very declaration sought: "[T]hat the Huffs are entitled to use the [e]asement[s] to access the Huffs' [p]roperty, including both the THR Property and the Chumley Parcel, as

---

[7] To the extent aspects of the injunction-phase appeals suggest a lack of delineation, we respectfully disagree.

[8] We provide one example of a use that does not impermissibly burden the easement.  Other uses, if contested, will need to be judged prospectively on a case-by-case basis.

long as [the] Huffs do not intensify the [e]asement[s]." *Id.* Such a declaration would not extinguish delineation between the parcels. Yet the current declaratory judgment goes further than the judgment requested: "[T]he Huffs may use the Grant . . . to access the entirety of their real estate, *without regard for the delineation* between the THR [Property] and [the] Chumley Parcel[.]" *Id.* at 55 (emphasis added).

[18]  Our Supreme Court counsels us to exercise judicial restraint. *See generally, e.g.*, *Fraley v. Minger*, 829 N.E.2d 476, 792 (Ind. 2005). And "[u]nder the cardinal principle of judicial restraint, if it is not necessary to decide more, then it is necessary not to decide more." 21 C.J.S. Courts § 179 (2023); *see also* 20 Am. Jur. 2d Courts § 43 ("Unnecessary decisions by a court are to be avoided.").

[19]  Adhering to principles of judicial restraint, we ultimately affirm the partial grant of summary judgment in favor of the Huffs while narrowing the scope of the declaratory judgment. That is, we hereby clarify the Huffs are entitled only to the specific declaration sought in Paragraph 38 of their counterclaim/third-party complaint, which reads as follows: "The Huffs request the Court to enter a Declaratory Judgment that the Huffs are entitled to use the Easement to access the Huffs' Property, including both the THR Property and the Chumley

Parcel, as long as Huffs do not intensify the Easement." *Cain App. Vol. 2* at 154.[9]

## Conclusion

We affirm partial summary judgment for the Huffs while clarifying the Huffs are entitled only to the specific declaratory judgment sought in their pleading. Having clarified the scope of the judgment, we remand for further proceedings.

Affirmed and remanded.

Crone, J., and Robb, Sr. J., concur.

---

[9] Thus, in light of principles of judicial restraint, we decline to address the parties' arguments concerning the merits of the broader declaratory judgment the Huffs did not specifically request in their pleading.