ST. JAMES VILLAGE, INC., APPELLANT, *v.* JENNIFER A. CUNNINGHAM; CRAIG CUNNINGHAM; JAMES H. SALADIN; AND THELMA L. SALADIN, RESPONDENTS.

No. 49398

June 25, 2009                                      210 P.3d 190

[Rehearing denied September 15, 2009]

*McDonald Carano Wilson LLP* and *John Frankovich* and *Kimberly H. Albro*, Reno, for Appellant.

*Woodburn & Wedge* and *Nicholas F. Frey*, Reno, for Respondents.

## OPINION

By the Court, HARDESTY, C.J.:

In this appeal, we consider whether the servient estate owner has any authority to unilaterally relocate an easement burdening its property, provided that the relocation does not materially inconvenience the dominant estate owner.

To facilitate the development of its property into a planned community, appellant St. James Village, Inc., asked the dominant estate owners if St. James Village could relocate an easement that traversed across a portion of its property. The dominant estate owners refused to consent to the relocation. Accordingly, appellant filed a declaratory action in district court, seeking authorization to unilaterally relocate the easement, alleging that the relocation would not materially inconvenience the dominant estate owners. The district court denied appellant's requested relief, reasoning that *Swenson v. Strout Realty, Inc.*, 85 Nev. 236, 239, 452 P.2d 972, 974 (1969), mandates that the dominant estate owners consent to the relocation of the easement.

We are now asked to revisit a statement made in *Swenson*, that, in general, "the location of an easement once selected, cannot be changed by either the landowner or the easement owner without the other's consent." 85 Nev. at 239, 452 P.2d at 974. In doing so, St. James Village invites us to adopt section 4.8 of the Restatement (Third) of Property, which permits a servient estate owner to uni-

laterally relocate an easement so long as the relocation does not substantially affect the dominant estate's rights.

We conclude that the statement made in *Swenson* indicating that fixed easements cannot be moved is overbroad, and determine that adoption of section 4.8 of the Restatement (Third) of Property is warranted in those circumstances where the creating instrument does not define the easement through specific reference to its location or dimensions and the unilateral relocation will not materially inconvenience the dominant estate owner. Because the creating instrument in this case specifies the location and dimension of the easement, we conclude that the district court properly denied St. James Village's request for declaratory relief.

## FACTS AND PROCEDURAL BACKGROUND

Respondents Jennifer A. Cunningham, Craig Cunningham, James H. Saladin, and Thelma L. Saladin (collectively, the Cunninghams) own two parcels of property located in Washoe County that are adjacent to 1,600 acres owned by St. James Village. In 1974, the Cunninghams' predecessors in interest obtained an easement across the land that now belongs to St. James Village. The Cunninghams' predecessors purchased an express easement for access to their property from a public road. The deed for the easement gives a metes and bounds description of its specific location but is silent regarding any right to relocation by the servient estate. The Cunninghams' predecessors' easement deed was recorded in 1974. The conveyance to the Cunninghams was recorded in 1997 and included the metes and bounds description of the easement.

After St. James Village acquired the servient property, it designed a master-planned gated community. The easement, as it currently exists, crosses 14 lots in the planned development, 2 of which have been approved and recorded and 12 of which have been approved. To allow development of those lots as proposed in St. James Village's master plan, St. James Village seeks a slight relocation of the easement by adding curves to the existent roadway.[2] St. James Village proposes to shift the easement and eventually incorporate it into the paved roads that will serve the subdivision and be maintained by the homeowners' association. St. James Village attempted to reach an agreement with the Cunninghams to relocate the easement but the Cunninghams refused to consent.

Upon failing to reach an agreement with the Cunninghams, St. James Village sought declaratory relief in the district court, contending that ''property owners can unilaterally relocate easements,

[2]Please see map in Appendix A to this opinion.

if such relocation does not materially inconvenience the easement holder, in order to allow the development of their property.'' The Cunninghams moved to dismiss St. James Village's complaint for declaratory relief, arguing that dismissal was warranted because under *Swenson v. Strout Realty, Inc.*, 85 Nev. 236, 239, 452 P.2d 972, 974 (1969), consent to relocate by the dominant estate owner is always required.[3] Despite St. James Village's contentions that the law is unsettled in Nevada and adoption of section 4.8 of the Restatement would be a sensible development in the law of easements, the district court denied St. James Village the declaratory relief it sought. The court found that, under *Swenson*, Nevada law requires the consent of both parties to move an easement.[4] This appeal followed.

## DISCUSSION

On appeal, St. James Village argues that *Swenson* is not controlling on this issue, as the statement made in *Swenson* regarding unilateral relocation of easements is dictum. St. James Village then advocates for the adoption of section 4.8 of the Restatement (Third) of Property, governing unilateral relocation of easements, and this court's interpretation of that rule, which reads:

> *Except where the location and dimensions are determined by the instrument or circumstances surrounding creation of a servitude, they are determined as follows*:
>
> (1) The owner of the servient estate has the right within a reasonable time to specify a location that is reasonably suited to carry out the purpose of the servitude.
>
> (2) The dimensions are those reasonably necessary for enjoyment of the servitude.
>
> (3) Unless expressly denied by the terms of an easement, as defined in § 1.2, the owner of the servient estate is entitled to

---

[3]While the Cunninghams used summary judgment language in, and attached exhibits to, their motion, the district court considered the motion as one for seeking a dismissal under NRCP 12(b)(5) rather than summary judgment. Regardless, we treat the district court's order as one resolving a request for declaratory relief.

[4]The court summarily found:

> [T]he requirement of consent as stated in *Swenson*, *supra*, is currently the law in Nevada. The Court finds no statute, case, or other authority that has changed, modified, or overruled *Swenson*. It is not the place of the District Court to change the law or to determine what the Nevada Supreme Court should do.
>
> Because the Plaintiff has failed to plead a cognizable claim under Nevada law, the Court finds that Defendants have met the standard of dismissal by showing that Plaintiff is not entitled to relief under any set of facts that could be proved in support of its claim.

make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not

(a) significantly lessen the utility of the easement,

(b) increase the burdens on the owner of the easement in its use and enjoyment, or

(c) frustrate the purpose for which the easement was created.

(Emphasis added.) According to St. James Village's reading of the Restatement rule, nothing in the introductory language limits the applicability of the rule. St. James Village claims that such language merely refers to the locations and dimensions of an easement that can be adjusted. Moreover, St. James Village contends that if the creating document fails to expressly prohibit relocation of the easement, like the deed in this case, the easement may be moved by the owner of the servient estate. Although the deed in this appeal contains a specific description and location of the easement, the deed is silent as to relocation.

The Cunninghams argue that *Swenson* is controlling law, which precludes St. James Village from unilaterally relocating the easement. The Cunninghams further argue that even if *Swenson* is not authoritative on this matter and this court adopts the Restatement rule, St. James Village cannot prevail. According to the Cunninghams, the language prefacing section 4.8 of the Restatement (Third) of Property unambiguously provides that an easement may be unilaterally relocated so long as the creating instrument does not specifically define the location or dimensions of the easement. Because the deed granting the easement in this case defines the easement by metes and bounds, the Cunninghams argue that section 4.8 of the Restatement precludes unilateral relocation by St. James Village.

In resolving this appeal, we must consider whether a statement made in *Swenson* is controlling or mere dictum. While we determine that the statement made in *Swenson* is authoritative, we conclude that it is overbroad and public policy would be significantly furthered by implementation of the modern Restatement rule concerning relocation of easements by the servient estate owner. In adopting the Restatement rule, we determine that the plain meaning of the rule's introductory language prohibits application of the rule when the creating instrument provides for an express location or dimensions of the easement. Thus, when the easement at issue has a location certain, the Restatement rule is not applicable and the easement cannot be unilaterally relocated. Only when the creating instrument is silent as to the location of the easement may a servient owner seeking to unilaterally relocate the easement avail himself or

herself of the Restatement rule. And, even then, the servient owner must establish that it meets the three-factor test set forth in subsections a through c of section 4.8(3) of the Restatement (Third) of Property.

*Standard of review*

When the parties raise only legal issues on appeal from a district court order resolving a request for declaratory relief, this court will review the lower court's decision de novo. *Public Employees' Benefits Prog. v. LVMPD*, 124 Nev. 138, 146, 179 P.3d 542, 548 (2008). In this case, the single issue presented is whether Nevada law permits servient estate owners to unilaterally relocate easements traversing across their property. Because this is purely a legal question, this court's standard of review is plenary. *See id.*

*Swenson v. Strout Realty, Inc., is controlling*

In *Swenson v. Strout Realty, Inc.*, this court stated, "It is a general rule of law that, in the absence of [a] statute to the contrary, the location of an easement once selected, cannot be changed by either the landowner or the easement owner without the other's consent." 85 Nev. 236, 239, 452 P.2d 972, 974 (1969). Dictum is not controlling. *See Camacho v. State*, 119 Nev. 395, 398 n.7, 75 P.3d 370, 373 n.7 (2003). A statement in a case is dictum when it is "unnecessary to a determination of the questions involved." *Stanley v. Levy & Zentner Co.*, 60 Nev. 432, 448, 112 P.2d 1047, 1054 (1941). Thus, in order to determine whether the *Swenson* court's statement is dictum, this court must examine whether the issues involved in *Swenson* necessitated a determination of whether the location of an easement could be changed unilaterally.

In *Swenson*, a real estate broker sued Dorothy and Lester Swenson in order to recover a commission after the broker secured a viable buyer for property owned by the Swensons, but the Swensons refused to sign the escrow instruments, which rendered the sale incomplete. 85 Nev. at 237-38, 452 P.2d at 972-73. The Swensons countersued for damages arising out of a second transaction with the real estate broker wherein the Swensons asserted that the broker falsely represented that the Swensons could relocate an easement that traversed across the land that they purchased. *Id.* at 238, 452 P.2d at 973. The district court entered judgment in favor of the real estate broker, finding that the Swensons could not rely on the broker's legally incorrect statement that the easement could be relocated. *Id.* at 239, 452 P.2d at 974.

The *Swenson* court stated generally that "the location of an easement once selected[ ] cannot be changed by either the landowner or

the easement owner without the other's consent." *Swenson*, 85 Nev. at 239, 452 P.2d at 974. The court further stated that the broker's advice to the Swensons had been an innocent misrepresentation of the law by a nonlawyer and that the Swensons had not alleged bad faith or fraud on the part of the broker. *Id.* at 239, 452 P.2d at 973-74. Although the *Swenson* court did not clearly enunciate the applicable rule of law, it appears that the court considered at least two elements required to establish the cause of action: (1) the statement was false, and (2) the purchasers could rely on the statement. *Id.* at 239-40, 452 P.2d at 974. Prior to determining the reliance element of the test, the *Swenson* court examined the falsity element and concluded that the broker's statement was legally incorrect. *Id.* at 239, 452 P.2d at 974. Although, arguably, the court could have resolved the viability of the Swensons' claim based on its conclusion that the Swensons' reliance on the broker's statement was unreasonable, the court declined to reach that question until it determined whether the broker's statement was false. *See id.* at 239-40, 452 P.2d at 974. Because the court necessarily considered the falsity of the statement, we determine that *Swenson* is controlling on the issue of whether this court has established that unilateral relocation of an easement is prohibited.

Although *Swenson* is authoritative, we nevertheless consider whether the rule stated in *Swenson*, which prohibits unilateral relocation of express easements is overbroad and whether significant public policy considerations warrant this court's adoption of the modern section 4.8 of the Restatement (Third) of Property, which permits unilateral relocation under certain circumstances.

*Section 4.8 of the Restatement (Third) of Property*

St. James Village advocates for the adoption of the rule set forth in section 4.8 of the Restatement (Third) of Property because the rule's flexible approach is preferable to the rigid traditional rule, as it allows the owner of the servient estate to develop his or her property in any way that does not intrude upon the rights of the dominant estate. The Cunninghams argue against adoption of the Restatement rule, claiming that such a rule undermines the property rights and the bargained-for expectations of easement purchasers. After balancing public policy considerations, we adopt the Restatement rule.

The purpose of the Restatement rule is to "permit development of the servient estate to the extent it can be accomplished without unduly interfering with the legitimate interests of the easement holder." Restatement (Third) of Prop.: Servitudes § 4.8 cmt. f (2000). Moreover, the rule works to "increase overall utility because it will increase the value of the servient estate without diminishing the value

of the dominant estate and it will encourage the use of easements and lower their price by decreasing the risk [that] the easements will unduly restrict future development of the servient estate." *Id.* Allowing the servient estate owner to move the location of the easement burdening his or her property provides a further benefit in the form of a "fair trade-off for the vulnerability of the servient estate to increased use of the easement to accommodate changes in technology and development of the dominant estate." *Id.*

Jurisdictions adopting the Restatement rule give the same or similar reasons: allowing full economic development of the servient estate, *see Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229, 1236 (Colo. 2001) (noting that the rule "maximizes the overall utility of the land" and enables the owner of the servient estate to "make the most economic use of her land, including uses unforeseen when the easement originated"); *M.P.M. Builders, LLC v. Dwyer*, 809 N.E.2d 1053, 1058 (Mass. 2004) ("An easement is created to serve a particular objective, not to grant the easement holder the power to veto other uses of the servient estate that do not interfere with that purpose."), granting the owner of the servient estate an equal right to develop his or her property as that of the dominant estate owner, *see Dwyer*, 809 N.E.2d at 1057 (noting that the owner of a dominant estate generally has the right to increase the use of her land, including uses unforeseen when the easement originated), and fairly balancing competing property interests, *see Roaring Fork Club*, 36 P.3d at 1234-36 (noting that Colorado jurisprudence in other areas of property law was appropriately shifting to accommodate owners' competing uses and that the Restatement rule best served that accommodation).

We acknowledge the negative concerns surrounding the adoption of the Restatement rule. One concern is that the rule will trigger increased litigation over the reasonableness of the servient estate owner's proposed relocation. *See Herren v. Pettengill*, 538 S.E.2d 735, 736 (Ga. 2000). Other concerns include that the Restatement rule undermines certainty in the property rights of dominant estate owners, *see id.* (noting that the majority rule "provides certainty in land ownership"), and that it denies dominant estate owners the benefit of their bargain, *see id.* ("Allowing unilateral avoidance of the contract . . . not only would violate fairness principles, it also would create uncertainty in real property law by opening the door for increased litigation over 'reasonableness' issues based on today's conditions rather than those considered in the original bargain.").

Although adoption of the Restatement rule might indeed increase litigation, we determine that, under appropriate circumstances, public policy that is furthered by adoption of the Restatement rule sig-

nificantly outweighs the potential for increased litigation. Further, we conclude that the dominant estate owner's property rights are not undermined by adoption of the Restatement rule because the rule permits only reasonable alterations to the easement's location. The easement must also continue to serve the purpose for which it was created. Thus, the value of the easement is not lost by a reasonable relocation. And, since the value of the easement is not lost, the dominant estate owner is not denied the benefit of the bargain.

While we recognize that Nevada law has generally favored fixed property rights, *see, e.g., Boyd v. McDonald*, 81 Nev. 642, 650, 408 P.2d 717, 722 (1965), and we have strictly construed express easements, *see, e.g., S.O.C., Inc. v. The Mirage Casino-Hotel*, 117 Nev. 403, 408, 23 P.3d 243, 246-47 (2001), we determine that adoption of the Restatement rule is warranted because the modern approach that the Restatement rule conveys accommodates the development of the servient estate without unduly interfering with the dominant estate owner's rights, which are adequately safeguarded by the reasonableness limitations expressed in the Restatement rule. Therefore, in light of the practical realities of competing property uses and interests, we expressly adopt section 4.8 of the Restatement (Third) of Property to decide unilateral easement relocation cases.

Despite this court's adoption of the Restatement rule, the Cunninghams assert that, as applied to this case, St. James Village's proposed relocation is prohibited by the introductory language of the rule. Particularly, the Cunninghams argue that a plain reading of the prefatory language of section 4.8, which provides that the location and dimensions of an easement are determined by subsections 1 through 3 ''[e]xcept where the location and dimensions are determined by the instrument or circumstances surrounding creation of a servitude,'' bars relocation when the creating instrument specifies a location or dimensions certain. And, because the Cunninghams' deed contains a metes and bounds description of the easement, the Cunninghams claim that St. James Village cannot avail itself of the Restatement rule to unilaterally relocate the Cunninghams' easement.

In reply, St. James Village argues that the introductory language of section 4.8 does not limit the applicability of its provisions because such a reading would render that language and the language of subsection 3 inconsistent with each other. Section 4.8(3) provides that an easement may be unilaterally relocated ''[u]nless expressly denied by the terms of an easement.'' Therefore, St. James Village contends, unilateral relocation is only prohibited when the creating instrument expressly prohibits relocation. We disagree.

The language prefacing section 4.8 unambiguously states that the rule's provisions apply ''[e]xcept where the location and dimensions are determined by the instrument or circumstances surrounding cre-

ation of a servitude." Interpreting this introductory language as meaning that section 4.8's provisions will govern the relocation of easements so long as the easement at issue does not have a location or dimensions certain is consistent with subsection 3. Subsection 3 does not have any bearing on the introductory language of the rule; rather, subsection 3 is another limitation. Under section 4.8(3), even if the easement does not have a location or dimensions certain, if the creating instrument prohibits relocation, then the servient estate owner may not avail himself or herself of the Restatement rule's unilateral relocation provision.

Construing the introductory language of the Restatement rule to prohibit unilateral relocation when the deed contains a certain location or dimensions is not only supported by a plain reading of the rule, but also a majority of jurisdictions' caselaw addressing the issue. *See, e.g.*, *Stanga v. Husman*, 694 N.W.2d 716, 718-20 (S.D. 2005) (applying the Restatement rule and permitting unilateral relocation by the servient estate owner because the creating instrument did not specifically define the location or dimensions of the easement); *Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229, 1236-37 (Colo. 2001) (adopting section 4.8(3) of the Restatement (Third) of Property but explaining that "under the Restatement, a burdened estate owner may unilaterally move an easement (unless it is specified in deeds or otherwise to have a location certain)"); *Lewis v. Young*, 705 N.E.2d 649, 654 (N.Y. 1998) (permitting unilateral relocation after determining that the deed's lack of specificity in describing the easement implied that the original parties did not intend to fix the location).

Here, the Cunninghams' recorded deed expressly contains a metes and bounds description of the easement. Thus, since the deed's description indicates that the original parties intended to fix the location of the easement, St. James Village cannot avail itself of the Restatement rule and relocate the easement absent the Cunninghams' consent—even if the proposed relocation does not hinder the Cunninghams' interests. Accordingly, we affirm the district court's order dismissing St. James Village's complaint.

## CONCLUSION

Because we determine that the *Swenson* court necessarily considered whether an easement can be relocated unilaterally, we conclude that the statement in *Swenson*—that once the location of an easement is determined it cannot be relocated without the dominant estate owner's consent—is not dictum and is therefore authoritative on the issue. Nevertheless, we determine that the rule in *Swenson* is overbroad and, in light of competing property interests, adoption of section 4.8 of the Restatement (Third) of Property is warranted.

Adoption of this Restatement rule will accommodate the development of the servient estate while simultaneously protecting the dominant estate's interests under appropriate circumstances in which the Restatement rule applies. Accordingly, we expressly adopt section 4.8 of the Restatement (Third) of Property in unilateral easement relocation cases.

In adopting the Restatement rule, however, we further conclude that, based on a plain reading of the rule and considering other jurisdictions' interpretations of the rule, the introductory language of section 4.8 prohibits unilateral relocation when the creating instrument defines the easement through specific reference to its location or dimensions.

Therefore, because the Cunninghams' deed contained a metes and bounds description of the easement, we affirm the district court's order dismissing St. James Village's complaint as the district court reached the correct result, even though the district court relied on different grounds in reaching its decision. *See generally Hotel Riviera, Inc. v. Torres*, 97 Nev. 399, 403, 632 P.2d 1155, 1158 (1981) (holding that "[i]f a decision below is correct, it will not be disturbed on appeal even though the lower court relied upon wrong reasons").

PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, and GIBBONS, JJ., concur.

# APPENDIX A

ST. JAMES'S VILLAGE
UNIT 2B

JOY LAKE ROAD

ST. JAMES'S VILLAGE
UNIT 2B

FUTURE LOTS

CENTERLINE 41'
ACCESS EASEMENT

EXISTING 50' ACCESS EASEMENT
PER DOCUMENT NO. 338261

SOUTH LINE OF SECTION 14,
T.17N., R.19E., M.D.M.

EXHIBIT MAP
SOUTHWIND ACCESS EASEMENT

SCALE: 1" = 400'