138 Nev., Advance Opinion 24

IN THE SUPREME COURT OF THE STATE OF NEVADA

JEROME MORETTO, TRUSTEE OF
THE JEROME F. MORETTO 2006
TRUST,
Appellant,
vs.
ELK POINT COUNTRY CLUB
HOMEOWNERS ASSOCIATION, INC.,
Respondent.

No. 82565



FILED

APR 07 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court judgment in an action for injunctive and declaratory relief concerning a common-interest-community homeowners association's power to adopt rules. Ninth Judicial District Court, Douglas County; Nathan Tod Young, Judge.

*Affirmed in part, reversed in part, and remanded.*

Lemons, Grundy & Eisenberg and Robert L. Eisenberg and Todd R. Alexander, Reno,
for Appellant.

Resnick & Louis, P.C., and Prescott T. Jones and Carissa Yuhas, Las Vegas,
for Respondent.

_____

BEFORE THE SUPREME COURT, SILVER, CADISH, and PICKERING, JJ.

*OPINION*

By the Court, CADISH, J.:

In this appeal, we are asked to consider the extent of a common-interest-community homeowners association's power to adopt rules restricting the use and design of individually owned properties. Specifically, we are asked to adopt sections 6.7 (use restrictions) and 6.9 (design restrictions) of the Restatement (Third) of Property: Servitudes. Both sections provide that a homeowners association does not have the implied power to impose use or design restrictions on individually owned properties and that the association's governing documents must expressly authorize the imposition of such restrictions to do so. In addition, these sections suggest that any such restrictions should be subject to a "reasonableness" requirement.

We conclude public policy favors the adoption of sections 6.7 and 6.9 of the Restatement (Third) of Property: Servitudes. These two sections, when read in conjunction, provide well-reasoned limits on construing an association's implied power to act with respect to individually owned property. Therefore, we now adopt the approach from these two sections. As applied to the underlying matter, we conclude that article 16, section 3 of the respondent homeowners association's bylaws includes an express provision allowing it to adopt design restrictions for individually owned property. However, during the proceedings before the district court, neither party addressed whether the respondent's exercise of its design-control power was reasonable, which is a central tenet of section 6.9. As a result, we reverse the district court's grant of summary judgment with respect to appellant's claim for declaratory relief, which sought to invalidate respondent's newly adopted architectural and design rules. Additionally,

we reverse the district court's grant of summary judgment with respect to appellant's accompanying violation of property rights claim. We remand the case back to the district court to consider whether respondent's rules are reasonable under sections 6.7 and 6.9 of the Restatement (Third) of Property: Servitudes.

### FACTS AND PROCEDURAL BACKGROUND

Respondent Elk Point Country Club Homeowners Association, Inc. (hereinafter EPCC), is the governing body of the Elk Point subdivision, a common-interest community located at Lake Tahoe's Zephyr Cove, in Douglas County, Nevada. EPCC was initially established in 1925 to manage land owned by the Northern Nevada chapter of the Elks Club. At that time, the land was held as a vacation area for local Elks Club members. Beginning in 1929, EPCC began selling individual lots within the subdivision. Since then, the subdivision has consisted of both individual lots held in private ownership and common property held by EPCC for the benefit of all individual property owners within the community. EPCC has retained control of the operation of common areas and facilities within the community.

EPCC, as part of its management structure, has both articles of incorporation and bylaws. Like most bylaws, EPCC's bylaws set forth the governing rules by which EPCC operates, including establishing a five-person executive board tasked with managing the affairs of the community. Also included in its bylaws is a provision giving EPCC's executive board the power to adopt rules and regulations necessary to carry out its powers. Specifically, EPCC's bylaws authorize the executive board to "make rules and regulations not inconsistent with the laws of the State of Nevada, the Articles of Incorporation and the Bylaws of the Corporation."

 

EPCC's governing documents are somewhat different from most modern common-interest communities in that the covenants restricting individual property owners are included in its bylaws, as opposed to having a separate declaration of covenants, conditions, and restrictions (CC&Rs). Pertinent to this appeal, however, the bylaws include article 16, section 3, which imposes a restriction requiring individual landowners to seek approval of EPCC's executive board prior to constructing any structures on their individually owned property.

Appellant Jerome Moretto took title to property in the Elk Point subdivision in 1990. Included in Moretto's chain of title was a provision stating that his property was subject to any and all bylaws, rules, and regulations that EPCC establishes. At all relevant times, EPCC's bylaws included article 16(3)'s restriction requiring EPCC to pre-approve construction of any structure on individually owned lots prior to its commencement.

In 2018, EPCC's executive board, exercising its rulemaking authority, adopted a regulation establishing an architectural review committee. At the same time, the executive board adopted a set of guidelines titled, "Architectural and Design Control Standards and Guidelines" (Architectural Guidelines). These guidelines created detailed restrictions on individually owned lots, including restrictions regarding building height and setbacks as well as design-control restrictions regarding exterior lighting, building materials, and landscaping. The new regulations required any landowner wanting to develop their lot to comply with these new guidelines and to submit any proposed plans to the architectural review committee, which, in turn, would recommend to the executive board whether to approve the proposed development.

In response to these new guidelines, Moretto filed a complaint seeking, among other things, a declaration that the new guidelines exceed the scope of EPCC's rulemaking authority. EPCC filed its answer, and both parties subsequently filed competing motions for summary judgment. EPCC pointed to article 16(3) of the bylaws regarding its authority to approve construction on individually owned lots and its general rulemaking authority as the basis for its ability to adopt the Architectural Guidelines. Moretto argued EPCC did not have any express power to adopt the Architectural Guidelines and advocated that the district court interpret an association's implied power to adopt rules under NRS Chapter 116 as being limited consistent with sections 6.7 and 6.9 of the Restatement (Third) of Property: Servitudes. The district court, without addressing Moretto's argument regarding sections 6.7 and 6.9 of the Restatement (Third) of Property: Servitudes, held that EPCC did have the authority to adopt rules to control the design of individually owned property and therefore did not exceed the scope of its authority when adopting the Architectural Guidelines. This appeal followed.

## DISCUSSION

We review de novo a district court's grant of summary judgment. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper when no genuine issue of material fact exists, such that the moving party is entitled to judgment as a matter of law. *Id.*

On appeal, the parties' arguments are similar to the ones presented to the district court. Moretto advocates that this court should adopt sections 6.7 and 6.9 of the Restatement (Third) of Property: Servitudes. He contends that section 6.9 requires that an association must

have express power to adopt design control restrictions, which EPCC does not have. Instead, he suggests that under the principles outlined in section 6.7, EPCC only possesses a general rulemaking power and therefore is limited in its power to adopt restrictions concerning individually owned property. EPCC does not address whether we should adopt sections 6.7 and 6.9 of the Restatement (Third) of Property: Servitudes but instead argues that its adoption of the Architectural Guidelines was within the scope of its authority under its bylaws.

*Restatement (Third) of Property: Servitudes sections 6.7 and 6.9*

Moretto urges this court to adopt sections 6.7 and 6.9 of the Restatement (Third) of Property: Servitudes.[1] Where parties raise issues of a purely legal nature, we will conduct a plenary review. *St. James Vill., Inc. v. Cunningham*, 125 Nev. 211, 216, 210 P.3d 190, 193 (2009).

Sections 6.7 and 6.9 concern an association's authority to adopt rules regarding the use and design of individually owned properties in a common-interest community. Section 6.7 of the Restatement (Third) of

---

[1]We reject EPCC's contention that Moretto did not properly preserve the issue of whether this court should adopt the Restatement's approach. It is a well-recognized rule that issues not raised by a party in the district court are deemed waived on appeal. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981). However, as EPCC concedes, Moretto raised the argument regarding the Restatement's approach in its briefing to the district court. *Old Aztec*'s bar applies in the limited circumstances where the issue has not been "urged in the trial court." *See id.* While Moretto is now urging this court to expressly adopt the Restatement's approach, as opposed to asking the district court to interpret NRS Chapter 116 as being limited by the Restatement's nonbinding principles, we do not consider this to be materially different from the point he "urged in the trial court." Moreover, because we are considering this issue de novo, we do not concern ourselves with the parties' arguments regarding whether the district court properly considered this issue.

Property: Servitudes provides that an association authorized to adopt rules under a general grant of such power may adopt rules concerning the use of individually owned property only to the extent they relate to the protection of common property or to the prevention of nuisance-like activities. Restatement (Third) of Prop.: Servitudes § 6.7(3) (Am. Law Inst. 2000). General rulemaking powers are construed narrowly because a contrary interpretation runs counter to the traditional expectation that landowners are free to use their property in any manner not expressly prohibited, with the limited exception being that an association is permitted to protect against neighborhood nuisances by adopting preventative rules. *Id.* at cmt. b.

While section 6.7 concerns an association's power to adopt rules governing the *use* of property, section 6.9 concerns an association's power to adopt rules to control the *design* of individually owned properties. *See generally* Restatement (Third) of Prop.: Servitudes § 6.9 (Am. Law Inst. 2000). Section 6.9 states this:

> Except to the extent provided by statute or authorized by the declaration, a common-interest community may not impose restrictions on the structures or landscaping that may be placed on individually owned property, or on the design, materials, colors, or plants that may be used.

"The purpose of this section is to negate the existence of implied design-control powers." *Id.* at cmt. b. Section 6.9's rationale parallels the reasoning of section 6.7, that an association does not have the implied power to restrict the design of individually owned property because such restrictions are neither necessary for "the effective functioning of the community" nor "further public interests or fulfill reasonable expectations of the property owners." *Id.* at cmt. a. This stance—that design control

SUPREME COURT
OF
NEVADA

(O) 1947A

powers are valid only when expressly stated—protects individual landowners' reliance interest that an association cannot impose design-control restrictions absent express authorization by the association's declaration. *Id.* Specifically, "[l]ong tradition supports the individual's right to determine the aesthetic qualities of the home and, within limits imposed by zoning and building codes, to construct structures that suit his or her tastes and needs." *Id.*

Sections 6.7 and 6.9's stance regarding an association's implied authority to act with respect to individually owned property comes from the broader discussion in comment b to section 6.7 addressing the differences between restrictions that are imposed as part of the association's declaration versus those adopted through the association's rulemaking power. *See generally* Restatement (Third) of Prop.: Servitudes § 6.7 cmt. b. Specifically, "rules are usually adopted by the governing board, or by a simple majority of the owners who vote on the question, and are seldom recorded." *Id.* This can be contrasted with restrictions included in a declaration that "is recorded before individual properties are sold and usually can be amended only with the consent of a supermajority of the property owners." *Id.* The drafters worried that if an association's implied power to act is construed broadly, an association may be able to adopt restrictions concerning the use of individually owned property without the "notice and the safeguards afforded by the supermajority vote needed for an amendment to the declaration." *Id.*

Additionally, the drafters described the difference between an association's power and responsibility over common property and that over individually owned property. *Id.* While "an association enjoys an implied power to make rules in furtherance of its power over the common property,"

it "has no inherent power to regulate use of the individually owned properties in the community, . . . except as implied by its responsibility for management of the common property." *Id.* It is this rationale that underlies the conclusion that unless an association is expressly given a more expansive power, a generally worded rulemaking power included in an association's declaration does not provide an association with a broad implied power to adopt rules to regulate either the use or design of individually owned property.

We have previously adopted sections of the Restatement (Third) of Property: Servitudes when doing so furthered public policy and was consistent with Nevada law. *See St. James Vill.*, 125 Nev. at 218-19, 210 P.3d at 195 (adopting section 4.8 of the Restatement (Third) of Property: Servitudes and holding the public policy interests advanced by adopting the rule outweighed the potential of any increased litigation associated with its adoption); *see also Artemis Expl. Co. v. Ruby Lake Estates Homeowner's Ass'n*, 135 Nev. 366, 372, 449 P.3d 1256, 1260 (2019) (applying Restatement (Third) of Property: Servitudes section 6.2). Moreover, the Restatement's approach is consistent with the importance and high value Nevada law places on private property ownership and use. *See McCarran Int'l Airport v. Sisolak*, 122 Nev. 645, 659, 137 P.3d 1110, 1120 (2006) (stating "it is clear that Nevadans' property rights are protected by our State Constitution"); *State v. Hill*, 59 Nev. 231, 239, 90 P.2d 217, 220 (1939) (stating unconstitutional regulation of private property constitutes an "invasion of . . . [individual] property rights"). Additionally, we conclude that the Restatement's approach is consistent with NRS 116.31065's requirement that an association's rules be reasonably related to the specified purpose for which they are adopted, sufficiently explicit in their prohibition, and in all

other aspects consistent with the association's governing documents. *See* NRS 116.31065(1), (2), and (4).

In weighing the interests discussed above, we conclude that public policy interests and Nevada's strong protection of private property owners' expectations and ownership rights are best served by adopting the Restatement's approach. Specifically, we believe that the drafters' rationale for these two sections is particularly persuasive. Taking the approach that an association does not have an inherent power to regulate individually owned property protects the traditional expectations of landowners, ensures landowners are afforded proper notice before restrictions are imposed on their individual property, and prevents an association from circumventing the procedural protections landowners would be afforded if the association had adopted the design-control restrictions as covenants in the association's declaration. Additionally, we recognize that design-control restrictions, where legitimately promulgated, may benefit individual property owners within a community. Specifically, requiring a uniform design among individual properties may contribute to an increase in property values by preventing aesthetic nuisances. Restatement (Third) of Prop.: Servitudes § 6.9 cmt. d. Further, uniformly applied restrictions may improve residents' quality of life. *See id.*

For these reasons, we adopt sections 6.7 and 6.9 of the Restatement (Third) of Property: Servitudes to govern issues concerning an association's authority to enact rules regarding the restriction of individually owned property.

*Under Restatement sections 6.7 and 6.9, EPCC had the authority to adopt the Architectural Guidelines*

Moretto contends that, under the Restatement's approach, EPCC did not possess the authority to adopt the Architectural Guidelines.

Specifically, he appears to argue that (1) EPCC's bylaws only provide the association with a generally worded rulemaking power and (2) even if the bylaws did expressly authorize EPCC to adopt the Architectural Guidelines, EPCC does not have a recorded *declaration of CC&Rs* that expressly authorizes it to do so.

The district court concluded that article 16(3) of EPCC's bylaws authorized EPCC to adopt the Architectural Guidelines. Applying the Restatement's approach, we agree with the district court's conclusion.

Article 16(3) states that "[n]o structure of any kind shall be erected or permitted upon the premises of any Unit Owner, unless the plans and specifications shall have first been submitted to and approved by the Executive Board." We conclude that article 16(3) falls squarely within the type of express authorization that section 6.9 requires to allow an association to adopt design-control restrictions. Restatement (Third) of Prop.: Servitudes § 6.9 cmt. c (stating a provision authorizing an association to "approve or disapprove any construction or alteration of the landscape within the community" constitutes a valid express design-control power). By requiring approval of the plans and specifications for any new construction, article 16(3) plainly contemplates the ability of the executive board to review and apply appropriate standards to evaluate those items. Adopting rules to carry out that express power is thus permissible.

Instead of addressing this section of EPCC's bylaws, Moretto addresses only article 3(2), which states, "[t]he Executive Board shall have the power to conduct, manage and control the affairs and business of the Corporation and to make rules and regulations not inconsistent with the laws of the State of Nevada, the Articles of Incorporation and the Bylaws of the Corporation." Neither party disagrees that this provision constitutes a

generally worded rulemaking power and, if standing alone, would be insufficient to adopt the Architectural Guidelines based on Restatement section 6.7.[2] But we disagree with Moretto's overall conclusion that EPCC has no authority to adopt design-control restrictions because, as indicated, article 16(3) is a valid restrictive covenant that authorizes EPCC to adopt rules to control the design of individually owned property within the Elk Point community.

We also disagree with Moretto's second argument that for a restrictive covenant affecting individually owned property to be valid, it must be included in a separate declaration of CC&Rs. Restatement section 6.9 requires only that an express grant of authority be included in the association's "declaration," which is defined as "[a] recorded document or documents containing servitudes that create and govern the common-interest community." Restatement (Third) of Prop.: Servitudes § 6.2(5) (Am. Law Inst. 2000). EPCC's bylaws were recorded in Douglas County and, thus, fall squarely under the Restatement's definition of a declaration.[3]

---

[2]As Moretto points out, even EPCC admitted in its motion for summary judgment that it does not view article 3(2) as constituting a specific grant of authority.

[3]We note that NRS 116.037 defines a "declaration" as "any instruments, however denominated, that create a common-interest community, including any amendments to those instruments." Under this definition, most common-interest communities' bylaws would not constitute a "declaration," and this opinion should not be construed as generally equating a common-interest community's bylaws with its "declaration." Here, however, Moretto has not relied on NRS 116.037, and EPCC was created in 1925, long before NRS Chapter 116 took effect in 1992. See 1991 Nev. Stat., ch. 245, § 142, at 587 (adopting the Uniform Common-Interest Ownership Act effective Jan. 1, 1992). Moreover, we have previously declined to apply sections of NRS Chapter 116 to common-interest

Because these restrictions were contained in EPCC's bylaws that were publicly recorded, Moretto and others within the Elk Point community were on notice that the association had the authority to pre-approve the construction of structures on individually owned property.[4]

In conclusion, under the Restatement's approach, article 16(3) constitutes a valid restrictive covenant expressly authorizing EPCC to adopt the Architectural Guidelines.

*The record on appeal does not demonstrate whether the Architectural Guidelines are reasonable*

Although we agree with the district court's conclusion that EPCC had the authority to adopt the Architectural Guidelines, we nevertheless remand for the district court to consider whether the

---

communities that formed prior to the Legislature's adoption of the Uniform Common-Interest Ownership Act when doing so is inconsistent with legislative intent and strict adherence would lead to unreasonable results. *See Artemis*, 135 Nev. at 372-74, 449 P.3d at 1260-62 (holding NRS 116.3101(1)'s requirement did not apply to pre-1992 common-interest communities). Applying the same rationale discussed in *Artemis*, we hold NRS 116.037's definition does not apply to EPCC as a pre-1992 common-interest community because strict adherence to NRS 116.037's definition of a declaration would otherwise frustrate the purpose of subjecting communities such as EPCC, which does not have a separate declaration of CC&Rs, to NRS Chapter 116. EPCC's bylaws can only be amended by a supermajority vote, so they in essence function as a declaration of CC&Rs insofar as EPCC and its individual property owners are concerned. Thus, based on the specific facts and arguments presented in this case, we conclude that NRS 116.037's definition does not apply and EPCC's bylaws fall within the Restatement's definition of a "declaration."

[4]Although Moretto purchased his property in 1990 and the record on appeal only contains a copy of EPCC's bylaws recorded in 2005, Moretto acknowledges that he had notice of and was subject to the bylaws at the time of his purchase.

SUPREME COURT
OF
NEVADA

(O) 1947A

Architectural Guidelines are reasonable and thus valid under Restatement section 6.9.

We recognize the concerns that arise when an association's declaration, like EPCC's, affords the association a highly discretionary power to effectuate design-control restrictions. In fact, comment d to section 6.9 highlights these concerns:

> Discretionary design controls create two kinds of risks for property owners. [First,] [t]hey may not be able to develop in accordance with their expectations because they cannot predict how the controls will be applied. Second, property owners may be subject to arbitrary or discriminatory treatment because there are no standards against which the appropriateness of the power's exercise can be measured.

Restatement (Third) of Prop.: Servitudes § 6.9 cmt. d. To safeguard against these concerns, the drafters note that courts that have considered this issue have, instead of invalidating the power, imposed a reasonableness requirement. *Id.* In the context of the adoption of association guidelines, as occurred here, the Restatement notes that consistent application of the guidelines is

> nearly always upheld if within the scope of the design-control power granted by the declaration. Decisions made without deliberation and articulation of reasons for the decision, decisions based on irrelevant criteria or erroneous information, and decisions that violate association guidelines are nearly always held unreasonable. Determining whether design-control powers have been unreasonably exercised requires a fact-specific, case-by-case inquiry.

*Id.* Thus, while we hold that EPCC had authority to adopt the Architectural Guidelines based on article 16(3) of the bylaws, this does not mean it has

unfettered authority to impose any and all restrictions. Rather, we hold its authority is cabined by a reasonableness requirement in order to protect the rights and expectations of the individual property owners.

The reasonableness test strikes a balance between ensuring an association's action is not beyond the scope of its authority while otherwise deferring to the substance of the association's action. *Id.* Under a reasonableness standard, the court's focus is on whether "the committee informs itself of the facts and is consistent in its treatment of community members," as opposed to focusing on whether the court agrees with the "aesthetic judgment" of the association's decision. *Id.*

With respect to this reasonableness test, we find the Appellate Court of Connecticut's decision in *Grovenburg v. Rustle Meadow Associates, LLC*, 165 A.3d 193 (Conn. App. Ct. 2017), to be particularly instructive. The *Grovenburg* court discussed, in detail, the factors trial courts should balance to determine whether an association's exercise of its design-control authority is reasonable. Specifically, it suggested courts should consider the following factors:

> the rationales proffered by the association for its exercise of discretionary authority; the specific nature of the activity proposed by the plaintiffs; the relationship between any legitimate interests of the association and its exercise of discretionary authority; the purposes of the association and the general plan of development for the common interest community, as reflected in its governing instruments; and the extent to which discretionary authority was exercised in good faith or in an arbitrary manner.

*Id.* at 233. We believe these factors are well suited for the type of analysis a court should conduct when evaluating the reasonableness of design-control restrictions. While this case is distinguishable from *Grovenburg* in

SUPREME COURT
OF
NEVADA

(0) 1947A

15

that Moretto's challenge arises from the adoption of the Architectural Guidelines themselves, rather than a specific decision under them, the court can look to these factors, to the extent they apply to the circumstances here presented, in evaluating the reasonableness thereof. The district court must also consider the extent to which the new rules depart from the preexisting community design standards in Elk Point and whether the restrictions imposed are consistent with similarly situated communities. *See, e.g.*, Restatement (Third) of Prop.: Servitudes § 6.9 ills. 8 & 9 (illustrating how natural or technological changes may render prior architectural guidelines impractical or unwarranted justifying changes to an association's guidelines); *see also Kies v. Hollub*, 450 So. 2d 251, 256 (Fla. Dist. Ct. App. 1984) (considering whether a landowner's development of his property was consistent with properties in similarly situated communities). To the extent these guidelines do impose a change in applicable standards, the court must weigh the "strength of the reasons supporting the change against the fairness claims of the property owners who will be harmed by the change." Restatement (Third) of Prop.: Servitudes § 6.9 cmt. d. These factors are to be considered on a case-by-case basis and are highly dependent on the underlying facts. *Id.*

Reviewing the district court's order and the record on appeal, we conclude that the parties did not present sufficient evidence for the district court to evaluate the reasonableness of the restrictions or for us to do so on appeal. Consequently, we remand to the district court to consider this issue. On remand, the parties should address, and the district court should consider, whether (1) the Architectural Guidelines themselves are reasonable and (2) to the extent the restrictions regarding the design of individually owned property changed as a result of the new rules in

comparison to the prior plan approval process, to what extent that change is justified and reasonable, consistent with section 6.9 and the factors outlined above. The burden will be on Moretto to make a prima facie showing that the Architectural Guidelines are unreasonable. *See generally* Restatement (Third) of Prop.: Servitudes § 6.9 cmt. d (stating an association's member has the burden of showing rules adopted under an express design-control power are unreasonable, and upon a prima facie showing, the burden shifts to the association to prove that the rules are fair and reasonable). Therefore, if Moretto makes a satisfactory showing, the burden will shift to EPCC to establish that the rules are both fair and reasonable under all the circumstances. *Id.*

*Moretto's other arguments*

Moretto's complaint asserted four other claims for relief in addition to his claim for declaratory relief, including a claim that the Architectural Guidelines constitute a violation of his property rights. Other than the declaratory relief claim, Moretto's appeal challenges only the district court's dismissal of his violation of property rights claim as noncognizable. We disagree with the district court's conclusion that Moretto's claim is noncognizable. Courts are to analyze claims according to their substance regardless of their label. *Otak Nev., LLC v. Eighth Judicial Dist. Court*, 129 Nev. 799, 809, 312 P.3d 491, 498 (2013). Based on the foregoing, to the extent EPCC's Architectural Guidelines are determined unreasonable and thus beyond EPCC's authority, such restrictions would be a violation of Moretto's rights as an owner in the community and potentially would warrant relief if proven. Therefore, we reverse the district court's summary judgment with respect to this claim. We otherwise affirm the district court's summary judgment with respect to Moretto's other three claims not addressed on appeal.

## CONCLUSION

We expressly adopt sections 6.7 and 6.9 of the Restatement (Third) of Property: Servitudes. We conclude that, under the Restatement's approach, EPCC's bylaws provide it the express power to adopt design-control restrictions on individually owned property in the Elk Point community. Although EPCC possesses the authority to adopt design-control restrictions for individually owned property, it must exercise that power reasonably. Here, the parties did not address this issue below. Thus, we reverse the district court's order granting summary judgment in favor of EPCC with respect to Moretto's declaratory relief claim and violation-of-property-rights claim, and we remand for consideration of whether the Architectural Guidelines are reasonable in light of the discussion herein.

_____, J.
Cadish

We concur:

_____, J.
Silver

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A